**HARDING UNIVERSITY, Richard Gibson, W.W. McAllister, III and Louraine Wilborn Trust, Plaintiffs,**

v.

**CONSULTING SERVICES GROUP, L.P., Kurt Voldeng, Roy Moore, Checkers Simon Rosner, David Knee, Sam Chabli, Sanford Holzer, Holzer, Hum & Jacoby, L.L.P., Thomas J. Dwyer & Associates, Thomas J. Dwyer, Fishman & Merrick, P.C. and Matthew Wayne, Defendants.**

No. 98 C 1762.

United States District Court,
N.D. Illinois,
Eastern Division.

March 10, 1999.

Edward G. Toptani, Gabriel J. Fischbarg, Lori Weiss, New York City, Leo C. Michaud, Seagoville, TX, for plaintiffs.

Stephen P. Bedell, Timothy G. McDermott, Scott M. Murray, Gardner, Carton & Douglas, Chicago, IL, for Consulting Services Group, LP, Kurt Voldeng, Roy Moore, Checkers simon Rosner, defendants.

Mark C. Harwell, Morris & Campbell, Houston, TX, Kevin T. Keating, Mark E. Shure, Keating & Shure, Ltd., Chicago, IL, for Kavid Knee, defendant.

George Spathis, Michael H. King, Ross & Hardies, Chicago, IL, Michael W. Mengis, Houston, TX, for Sam Chalabi, defendant.

George J. Manos, Lisle, IL, for Sanford Holzer, Olzer, Hum & Jacoby, defendants.

Gary A. Grasso, Ungaretti & Harris, Chicago, IL, for Thomas J. Dwyer & Associates, defendant.

## ORDER

BUCKLO, District Judge.

On February 11, 1999, Magistrate Judge Morton Denlow recommended that defendant's Consulting Services Group et al. motion for Sanctions [95–1] be denied. No objections have been received. I have reviewed Judge Denlow's well reasoned report & recommendation. I agree with both its reasoning and conclusions, The motion [95–1] is therefor denied.

### *REPORT AND RECOMMENDATION*

MORTON DENLOW, United States Magistrate Judge.

Rule 11 motions do not bring out the best in lawyers. This case is no excep-

tion. Unfortunately, the Court expects more from counsel in their dealings with one another than they have shown to date. Plaintiffs' counsel filed a complaint alleging that Defendants engaged in securities fraud, breach of fiduciary duty, common law fraud and negligence. Counsel for three defendants ("CSG defendants") responded with a letter demanding that Plaintiffs dismiss the complaint because it contains "substantive factual errors" and "baseless allegations." The CSG defendants followed up with a motion for Rule 11 sanctions demanding the complaint be withdrawn against them within twenty-one days. Plaintiffs' counsel responded with a letter accusing CSG's counsel of being in the process of "committing criminal extortion and blackmail" and of filing a "frivolous motion for sanctions based on a purported 'Declaration' obtained through intimidation, extortion and blackmail" and threatening to "file a cross-motion for sanctions against you and your law firm." The lawsuit was voluntarily dismissed against the CSG defendants, but seeking complete vindication, the CSG defendants filed their motion for sanctions, as amended, which is now before the Court. Hundreds of pages of documents and two oral arguments later, the Court concludes that the motion for sanctions, as amended, should be denied.

## I. BACKGROUND FACTS

On October 24, 1997, Plaintiffs filed a thirteen-count complaint in the United States District Court for the Eastern District of Texas against twelve defendants arising out of an investment that went bad. The case was subsequently transferred to this court. On March 2, 1998, counsel for defendants Consulting Services Group, L.P., Kurt Voldeng and Roy Moore (collectively "CSG defendants") wrote to Plaintiffs' Texas counsel, Leo C. Michaud ("Texas counsel"), pointing out purported factual errors in the complaint, demanding that the complaint be dismissed against the CSG defendants, and threatening to file a Rule 11 sanctions motion if an immediate

dismissal was not forthcoming. Plaintiffs did not blink.

It was not until July 24, 1998, that the CSG defendants served their motion seeking sanctions against Plaintiffs, their Texas counsel, and the Toptani Law Offices and Gabriel J. Fischbarg ("New York counsel"). The motion was served along with a letter stating that pursuant to Rule 11 the motion will not be filed with the Court for twenty-one days. The motion was supported in part by a declaration from Joe Hurley, who was the registered representative who worked with Plaintiffs in connection with their investments. In the declaration, he contradicted certain key allegations alleged in the complaint which formed the basis for joining the CSG defendants as parties.

On August 11, 1998, Plaintiffs' New York counsel wrote to CSG's counsel stating that "Plaintiffs will not be withdrawing their lawsuit" because "the complaint is well pleaded and based upon an investigation of the relevant facts in this case." New York counsel accused CSG's counsel of having obtained the declaration from Joe Hurley by means of "criminal extortion and blackmail," asserting that they "forced Mr. Hurley to sign your self-serving document that you drafted for him after you and Mr. Meals threatened to sue him if he did not sign it." New York counsel accused CSG's counsel of engaging in "strong arm tactics" and then threatened to have CSG's counsel "arrested on federal and state extortion charges" and to "file a grievance against you with the attorneys' disciplinary committee seeking to have you disbarred for your illegal conduct." In addition, New York counsel stated that if a sanctions motion were filed, he would file a cross motion for sanctions. CSG's counsel did not blink and continued to seek dismissal from Plaintiffs' Texas counsel.

CSG's threat of Rule 11 sanctions worked when Plaintiffs' Texas counsel blinked. Texas counsel advised CSG's

counsel that it would dismiss the CSG defendants with prejudice via a telephone conversation on August 21, 1998. This was confirmed in a letter by CSG's counsel to Plaintiffs' Texas counsel on August 27, 1998. Texas counsel notified New York counsel of the Plaintiffs' decision to dismiss the CSG defendants by fax dated August 21, 1998. Texas counsel requested New York counsel to submit the appropriate motion and order to accomplish the dismissal. On September 9, 1998, pursuant to a consent order of dismissal, Plaintiffs' dismissed the CSG defendants with prejudice.

Not content with the dismissal order, on October 2, 1998, the CSG defendants filed their amended motion for sanctions directed solely against Plaintiffs' New York counsel. The motion for sanctions was brought pursuant to Rule 11 of the Federal Rules of Civil Procedure and 15 U.S.C. § 78u–4(c)(1) and (2) of the Private Securities Litigation Reform Act of 1995. The matter was fully briefed, including supplemental briefs, and oral arguments were held on December 8, 1998 and January 20, 1999. Despite the factual issues presented by the conflicting affidavits, the parties agreed to submit this matter for resolution on the papers, without the need for live testimony. The parties agreed that the Court could draw inferences and decide factual disputes from the papers. This case presents the following issues: 1) Whether allegations contained in Plaintiffs' complaint violate Rule 11; 2) Whether a party must serve a motion for sanctions in order to trigger the twenty-one day safe harbor provision of Rule 11; and 3) Whether the Rule 11 motion was timely filed when Plaintiffs had voluntarily dismissed the CSG defendants over three weeks before the motion was filed.

## II.  RULE 11

### A.  RULE 11 WAS NOT VIOLATED

#### 1.  Plaintiffs' Counsel Performed a Pre–Suit Investigation

The first issue raised by the CSG defendants' Rule 11 motion is whether the ten challenged statements contained in the complaint violated Rule 11. The Court holds that the ten statements contained in Plaintiffs' complaint do not violate Rule 11 because Plaintiffs' New York counsel performed a reasonable investigation prior to filing the complaint.

The CSG defendants point to ten factual allegations contained in seven paragraphs of Plaintiffs' 135 paragraph complaint as a basis for the imposition of Rule 11 sanctions. On December 28, 1998, New York counsel filed a Supplemental Declaration which explained the factual basis for each of the ten factual allegations. In addition, during the telephonic oral argument held on January 20, 1999, New York counsel faxed to the Court copies of his handwritten interview notes which he claims provides support for the proposition that he interviewed prospective witnesses and defendants in September, 1997, prior to filing suit in October, 1997. These interview notes were produced in camera to the Court and copies were shown to CSG's counsel during the hearing and returned.

The first two factual allegations are contained in paragraphs 3 and 4 of the complaint, where Plaintiffs allege upon information and belief that defendants Moore and Voldeng were partners and employees of CSG. The Court finds that New York counsel had a factual basis for this allegation based upon his pre-suit telephone conversations with George Fox and Roy Moore.

The third and fourth statements are contained in paragraphs 20 and 21 of the complaint where Plaintiffs allege upon information and belief that Moore and Voldeng are controlling parties of CSG and each other under Section 15 of the Securities Act of 1933. The Court finds that New York counsel had a factual basis for this allegation based upon his pre-suit telephone conversations with Moore, Voldeng, Fox and Hurley. Furthermore, this alle-

gation is also in the nature of a legal conclusion.

The fifth and sixth statements are contained in paragraphs 26 of the complaint in which Plaintiffs allege that they retained CSG to act as an investment advisor prior to making their investments. The Court finds that New York counsel had a factual basis for these allegations based on his interviews with Joseph Hurley, Plaintiffs' investment manager and agent.

The seventh statement is a misstatement by the CSG defendants which does not actually appear in paragraph 27 of the complaint.

The eighth through tenth statements are found in paragraph 28(f), (h) and (i) of the complaint and allege that the CSG defendants performed due diligence regarding the Theta Group, the Theta Group offering and the individual managers of the Theta Group. The Court finds that New York counsel had a sufficient basis for the information based on his interviews with Hurley.

## 2. The Allegations Had Evidentiary Support

■ The central purpose of Rule 11 is to deter baseless filings to streamline the administration and procedure of the federal courts. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990), Rule 11 focuses on conduct rather than result. *Mars Steel Corp. v. Continental Bank*, 880 F.2d 928, 933 (7th Cir.1989). "Frivolous filings support but do not compel an inference of unreasonable investigation" and thus each Rule 11 case in the district court is unique. *Id.* How much investigation should have been done in a given case is a question of fact. *Id.*

■ Unless there is a specific disclaimer stating that additional investigation is necessary, sanctions are allowed under Rule 11 when no evidentiary support exists for a factual allegation. *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir.1996). The

standard certification for factual allegations under Rule 11(b)(3) is "that there is (or likely will be) 'evidentiary support' for the allegation, not that the party will prevail with respect to its contention." Fed. R.Civ.P. 11(b)(3) Advisory Committee Notes (1993 Amendments). A sanction will not be imposed unless a specific allegation is utterly void of support. *O'Brien*, 101 F.3d at 1489. This standard differs from the pre–1993 amendments. Under the former Rule, a signature on a pleading certified that the contentions therein were "well grounded in fact." The current version of the Rule requires only that an attorney conduct "an inquiry reasonable under the circumstances" into whether "factual contentions have evidentiary support." Fed.R.Civ.P. 11(b) and (b)(3).

■ Plaintiffs' filing of the complaint joining the CSG defendants was based upon a reasonable investigation and had a factual basis. New York counsel had multiple telephone conversations with prospective witnesses and defendants in order to determine whether Kurt Voldeng and Roy Moore were partners, employees and controlling parties of CSG and each other. This reasonable inquiry into the status of Voldeng and Moore led to evidentiary support for factual contentions of the Plaintiffs' complaint.

Further, Plaintiffs' New York counsel interviewed the Plaintiffs' investment manager and agent, Joseph Hurley, which led to a factual basis for the allegation that Plaintiffs retained CSG to act as an investment advisor prior to making their investments. The interviews with Hurley also supplied Plaintiffs' New York counsel with a sufficient basis for alleging that the CSG defendants performed due diligence regarding the Theta Group, the Theta Group offering, and the individual managers of the Theta Group.

The Court finds that Hurley contradicted certain key allegations alleged in the complaint after the filing of the complaint by the Plaintiffs. Hurley's pre-complaint

statements, as well as New York counsel's conversations with defendants, establish that counsel performed a reasonable investigation. The Court finds that the factual allegations regarding the CSG defendants did not violate Rule 11.

## B. THE SAFE HARBOR PERIOD OF RULE 11 BEGINS TO RUN UPON SERVICE OF THE MOTION

■ The second issue presented is whether Rule 11's twenty-one day safe harbor period began on March 2, the date of the letter demanding that the CSG defendants be dismissed, or on July 24, the date the Rule 11 motion was served. The CSG defendants contend the safe harbor period began to run March 3. Plaintiffs contend that the safe harbor period did not begin to run until July 24. The Court holds that the safe harbor period began on July 24.

Rule 11 specifically mandates that a motion for sanctions under the Rule shall be made separately from other motions or requests. Fed.R.Civ.P. 11(c)(1)(A). The motion must be served "as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other periods as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id.* Thus, upon notification of the alleged violative conduct, an offending party can avoid sanctions altogether if they withdraw their challenged position within 21 days. *Ridder v. City of Springfield,* 109 F.3d 288, 293 (6th Cir.1997).

The CSG defendants sent a warning letter on March 2, but did not serve their motion until July 24. The warning letter did not trigger the twenty-one day safe harbor period and cannot substitute for formal service of the Rule 11 motion. According to the safe harbor provision, a party seeking sanctions must: 1) serve a separate Rule 11 motion for sanctions on the opposing party; and, 2) file the motion with the court after 21 days in the event the allegedly offending paper is neither withdrawn nor corrected. *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1058 (7th Cir.1998); *Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y.1995) (commencement of the 21 day safe harbor period is not triggered by informal notice, either by letter or other means); *Weeks Stevedoring Co., Inc. v. Raymond International Builders, Inc.,* 174 F.R.D. 301, 305 (S.D.N.Y.1997) (a letter "does not meet the strict procedural requirements of Rule 11"); *Sears Roebuck & Co. v. Sears Realty Co.,* 932 F.Supp. 392, 408 (N.D.N.Y.1996) (Rule 11 requires service of a formal motion for sanctions rather than a letter of warning or oral request to withdraw the offending pleading).

The Seventh Circuit has continually recognized a party's duty to mitigate by appropriately tailoring a response to a baseless motion or complaint. *Dubisky v. Owens,* 849 F.2d 1034, 1038 (7th Cir.1988). Parties should use the least expensive alternative to alert the court and the offending party of a possible Rule 11 violation. *Id.* at 1038. This duty to mitigate is further reflected in Rule 11's obligation to serve the motion for sanctions upon opposing counsel before filing the motion with the court. Fed.R.Civ.P. (11)(c)(1)(A). Counsel is even expected to give informal notice to the opposing party whether in person, by telephone, or letter, of a potential violation before preparing and serving a Rule 11 motion. Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments).

While informal notice is often expected, the safe harbor period only begins to run upon service of the motion. Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments). Multiple warnings given to the plaintiff regarding defects in the presented claim are not motions. *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir.1998). The Rule requires service of a motion. *Id.* The defendant in *Barber* initially sent a

letter to the plaintiff to "serve as formal notice pursuant to Federal Rule of Civil Procedure 11(c)" and a subsequent letter claiming its intention to seek Rule 11 sanctions. *Id.* at 709. The *Barber* court found that to allow a warning of one's intent to file a Rule 11 motion to substitute for service of a formal motion would "wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion." *Id.* at 710. No motion was served on March 2. Consequently, the Court finds that the safe harbor period was triggered on July 24, not on March 2, 1998.

## C. THE RULE 11 MOTION WAS UNTIMELY

### 1. The 1993 Amendments Require a Prompt Filing

The third issue raised is whether the CSG defendants' motion was untimely because it was filed after they were dismissed with prejudice. The Rule 11 motion for sanctions must be timely served on an opposing party, and timely filed with the court. The safe harbor provision of Rule 11 provides that the motion may not be filed with the court until at least 21 days after service of the motion on the offending party. Fed.R.Civ.P. 11(c). "If during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments).

Before the 1993 Amendments took effect, a Rule 11 motion could be presented after final judgment, subject to the standards of local rules. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 397, 110 S.Ct. 2447, 2457, 110 L.Ed.2d 359 (1990) (upholding sanctions awarded three and a half years after voluntary dismissal). The 1993 amendments establish a significant change in the timing of a Rule 11 motion. *Ridder v. City of Springfield,* 109 F.3d 288, 295 (6th Cir.1997). The text of the Rule does not explicitly state when a Rule 11 motion should be brought, but the drafters advise that it should be brought early:

> The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery. Given the "safe harbor" provisions ... a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments).

The court must give the rule its plain meaning and apply the text rather than try to improve upon it. *Pavelic & LeFlore v. Marvel Group,* 493 U.S. 120, 123, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). If interpretation is necessary, the court must consider both the purpose of the rule and the deficiencies in its prior form which the amendment was designed to correct. *Cooter,* 496 U.S. at 392, 110 S.Ct. at 2454. The purpose of the 1993 amendments was to "reduce the number of motions for sanctions presented to the court" by affording a party the opportunity to avoid sanctions by withdrawing the allegedly offending complaint. Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments). A court is required to consider this goal when applying Rule 11. *See Cooter,* 496 U.S. at 392, 110 S.Ct. at 2454.

### 2. A Sanctions Motion Filed After a Voluntary Dismissal With Prejudice is Untimely

The Court finds that the CSG defendants failed to file the Rule 11 motion

for sanctions with the Court in a timely manner. The CSG defendants are not entitled to sanctions because they filed their motion after they had been voluntarily dismissed with prejudice as party defendants. *AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir.1997) ("Because [defendant] did not move for Rule 11 sanctions until after [plaintiff] had moved to dismiss its claims against him, ... Rule 11's cure provision prevents [defendant] from seeking sanctions."); *Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449, 452 (E.D.N.Y.1995) ("In this case, the complaint was voluntarily withdrawn prior to the filing of the motion which act immunized Plaintiff's counsel."). Service of the Rule 11 motion on Plaintiffs accomplished the desired result of causing Plaintiffs to dismiss the CSG defendants without further work on the part of the court or counsel, except for preparation and entry of the dismissal order.

In the case at hand, Plaintiffs' Texas counsel notified the CSG defendants on August 21, 1998, of their intent to dismiss the CSG defendants with prejudice. This informal notice was given to the CSG defendants 28 days after the service of the Rule 11 motion. The CSG defendants were subsequently formally dismissed with prejudice on September 9, 1998. The Court finds that the August 21, 1998 telephone call confirmed Plaintiffs' intent to withdraw the complaint. This was a valid notification because Plaintiffs did not continue to insist on a position that was adverse to the CSG defendants. The Court holds that when an alleged violation is informally or formally corrected by withdrawing some allegation or contention, the motion should not be filed with the court. Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments).

The Court concludes that the CSG defendants failed to timely file the Rule 11 motion for sanctions prior to the voluntary dismissal of the case against them. Since the Court found that Plaintiffs withdrew their position on August 21, 1998, the CSG defendants were required to file their Rule 11 motion after the expiration of the safe harbor period, August 14, 1998, but before withdrawal of Plaintiffs' alleged contention, August 21, 1998. Because the CSG defendants failed to file their Rule 11 motion prior to being voluntarily dismissed, they were time-barred from doing so later.

## D. IN THE EXERCISE OF DISCRETION, THE COURT WOULD DENY SANCTIONS

■ Alternatively, the Court holds that if Plaintiffs were in violation of Rule 11 by failing to dismiss the complaint before the expiration of the safe harbor period, this violation was *de minimis* and therefore does not warrant any sanctions. Once a violation of Rule 11 has been identified, the imposition of sanctions is within the discretion of the district court. *Land v. Chicago Truck Drivers Union,* 25 F.3d 509, 515 (7th Cir.1994). "The purpose of ... sanctions is to deter rather than to compensate ..." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments); *see also Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 126, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989) (stating that the purpose of Rule 11 is sanction not reimbursement); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 404, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990) (stating that the goal of Rule 11 is specific and general deterrence); *Brandt v. Schal Assocs., Inc.,* 960 F.2d 640, 645 (7th Cir.1992) (stating that the Rule's emphasis is punitive rather than compensatory).

■ The Seventh Circuit has emphasized that Rule 11 is not a fee shifting statute requiring the loser to pay. *Mars Steel Corp.,* 880 F.2d 928, 933 (7th Cir. 1989). Rule 11 focuses on conduct rather than result. *Id.* The main objective of Rule 11 is not to reward the victim of sanctionable conduct, but to deter baseless filings and abusive practices by attorneys. *Anderson v. County of Montgomery,* 111 F.3d 494, 502 (7th Cir.) Thus, the sanction "shall be limited to what is sufficient to

deter repetition of such conduct or comparable conduct by others similarly situated .." Fed.R.Civ.P. 11(c)(2). "The least severe sanction adequate to serve the purpose should be imposed." *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987). Further, the U.S. Supreme Court has held that the sanction should only include the cost of the discrete event causing the Rule 11 violation. *Business Guides, Inc. v. Chromatic Communications Enter. Inc.*, 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991).

In applying the *Business Guides* rule to the case at hand, the Court finds the discrete event causing the potential Rule 11 violation encompasses the interval between expiration of the safe harbor provision, August 14, 1998 and Plaintiffs' notice of its intention to voluntary withdraw the offending complaint on August 21, 1998. The Court holds that the CSG defendants suffered no damage during this period. While the withdrawal of Plaintiffs' complaint was unhurried, the CSG defendants gained the desired result. It defeats the purpose of Rule 11 to permit the CSG defendants to eat their cake (a voluntary dismissal with prejudice) and to have it too (seeking sanctions).

### III. PRIVATE SECURITIES LITIGATION REFORM ACT

The CSG defendants seek an alternative basis for sanctions under the Private Securities Litigation Reform Act ("PSLRA") enacted in 1995. 15 U.S.C. § 78u–4(c)(1) and (2). For all of the same reasons that the Court denies sanctions under Rule 11, it denies sanctions under the PSLRA.

### IV. CONCLUSION

Plaintiffs' New York counsel and the CSG defendants' out-of-state counsel have not demonstrated the professionalism and civility which lawyers should accord to each other. The Motion for Rule 11 sanctions, as amended, should be denied because Plaintiffs' counsel performed a suffi-

cient factual investigation before joining the CSG defendants as parties and because the sanctions motion was not timely filed. In addition, the Court recommends that Plaintiffs' New York counsel and the CSG defendants' out-of-state counsel be required to read the Rules of Professional Conduct for the Northern District of Illinois and the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit and to file a certification within 21 days that they have read those documents. As stated in the Seventh Circuit Standards: "A lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms." Counsel is advised to take these words to heart.