In the Interest of KMM, Minor.

RM, Appellant (Respondent),

v.

STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES, Appellee (Petitioner).

No. C–97–3.

Supreme Court of Wyoming.

May 7, 1998.

Spar L. Stormo, Casper, for Appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Dan S. Wilde, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant RM (the father) appeals from the district court's order which terminated his parental rights to KMM (the child).

We affirm.

## ISSUES

The father presents the following issues for our review:

1. Does the Wyoming Constitution require that ... an attorney be appointed to represent an indigent parent whose parental rights are being terminated in all cases?

2. Does the Wyoming Constitution and the United States Constitution require that an attorney be appointed to represent the Appellant under the facts of this case?

3. Since the evidence against appellant was almost exclusively inadmissible hearsay did this amount to Plain Error?

## FACTS

The child was born to the father and KMMM (the mother) on June 30, 1991. Soon after the child's birth, the Natrona County Department of Family Services began receiving child protection complaints against the child's parents. It received the first complaint on September 11, 1991. The complaint alleged that the home environment was filthy and that the mother did not check on the child even though the child was having trouble breathing. This complaint was substantiated as neglect, and the juvenile court gave legal custody of the child to the Department of Family Services, leaving physical custody with the parents.

The Department of Family Services received another child protection complaint on June 18, 1992, which alleged a filthy home environment and the absence of food appro-

priate for a one-year-old child. This complaint was also substantiated as neglect, and the juvenile court awarded physical custody of the child to the maternal grandmother and left legal custody with the Department of Family Services.

The child's physical custody was returned to the parents on November 20, 1992. On October 8, 1993, the Department of Family Services received a third child protection complaint against the parents. This complaint alleged that the home environment was filthy, that the child had not been fed, that the child was sleeping on a urine-soaked mattress, and that dirty clothes were piled to the ceiling. Once again, the complaint was substantiated as neglect. As a result, the juvenile court placed the child in the legal and physical custody of the Department of Family Services.

The parents divorced in October of 1993. In June 1994, the child was placed with her aunt and uncle. In August of 1994, the Department of Family Services learned that the father had been accused of sexually abusing his girlfriend's five-year-old son. The father was convicted of taking indecent liberties with a minor, and he was placed on probation.

On July 12, 1995, the father asked the Department of Family Services for permission to see the child. The Department of Family Services decided that supervised visitation would be allowed for one hour once a month. At the scheduled visits for August and September, the father was thirty minutes late, and the visits were canceled. The father was also late for the third scheduled visit, but the visit did occur.

The father could not participate in any subsequent visits because he was incarcerated. He had failed to attend the ordered sex offender counseling, and his probation was, therefore, revoked. The father is serving a term of not less than three years nor more than seven years in the Wyoming State Penitentiary.

The Department of Family Services filed a petition on September 11, 1996, for termination of the father's parental rights. At a hearing on the matter, the district court made the following findings:

> a) the [child], with a date of birth of June 30, 1991, has been left in the care of another person without provision for the child's support from the absent parent, namely, [the father], for a period of at least one (1) year; b) that the [child] has been abused or neglected by the parent and efforts by the Department of Family Services have been unsuccessful in rehabilitating the family and the family has refused rehabilitative treatment and the child's health and safety would be seriously jeopardized by remaining with or returning to the parent; c) that the [father] is incarcerated due to a conviction of a felony, and is unfit to have the custody and control of the child; and, d) that the natural mother of the minor ... relinquished and voluntarily severed all parental rights and relationship to the [child].

The district court terminated the father's parental rights and placed the child in the permanent care and control of the Department of Family Services so that she could be adopted or appropriately placed. The father appeals to this Court.

## DISCUSSION

■ The question at the root of the father's issues is whether he was entitled to be represented by court appointed counsel in the termination proceeding against him. The father wrote a letter to the district court in which he asked the court to appoint an attorney to represent him. The district court responded to the father by letter, stating: "If you desire specific relief from the Court, then it is necessary for you to bring a motion under the Wyoming Rules of Civil Procedure requesting the same."[1] Although the father filed various other motions throughout the proceedings, he did not file a motion for a court appointed attorney.

---

1. Although a specific rule of civil procedure pertaining to court appointed attorneys does not exist, W.R.C.P. 7(b)(1) states that an application to the court for an order shall be made by a written motion.

This Court has previously held that a *pro se* litigant will be treated the · same as he would be if he were represented by an attorney. *LP v. Natrona County Department of Public Assistance and Social Services (Parental Rights of GP)*, 679 P.2d 976, 984 (Wyo. 1984).

> One has the right to appear pro se; but when a person chooses to do so, he must be held to the same standard as if he were represented by counsel. He cannot expect the court or the attorneys for other parties to present his case. He cannot be given an advantage by virtue of his pro se appearance, and he cannot be placed at a disadvantage thereby other than whatever disadvantage results from his decision to proceed without the assistance of counsel.

*Johnson v. Aetna Casualty and Surety Company of Hartford, Connecticut*, 630 P.2d 514, 517 (Wyo.), *appeal dismissed and cert. denied*, 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981). Although this Court has indicated that a certain leniency is accorded to *pro se* litigants, the proper administration of justice requires reasonable adherence to the rules and requirements of the court. *Apodaca v. Ommen*, 807 P.2d 939, 943 (Wyo. 1991).

The fact that the father filed several motions in this case convinces us that his failure to file a motion for a court appointed attorney was not the result of his inability to understand the procedural requirement, especially given the fact that the district court specifically informed him that such a motion was required. Instead, it appears that the father's failure to file the motion was a deliberate decision not to file one rather than being an inability to do so.

Throughout the proceedings, the district court seemed to appreciate the difficulties the father was encountering by acting *pro se* and was as helpful as it was appropriate for the district court to be. We understand those difficulties as well. However, because the father did not make a formal motion for court appointed counsel, an order denying the motion does not exist, and it would be inappropriate for us to excuse the father's noncompliance with the applicable procedural rule.

██ We remain committed to the rule that this Court will not apply different procedural standards for *pro se* parties than we do for represented parties. To condone a practice which permits parties to ignore the rules of procedure would defeat the purposes for the rules. Consequently, the father's failure to make a formal motion for a court appointed attorney is determinative in this case.

Affirmed.