2001 WY 106

**Dan O. CALDWELL, III, Attorney at Law,[1] Appellant (Plaintiff),**

v.

**Martha Clark CUMMINGS and Lisa Vice, Appellees (Defendants).**

**No. 00–283.**

Supreme Court of Wyoming.

Nov. 6, 2001.

---

1. We have amended the caption on our own motion. The sanction at issue in this appeal was imposed on Mr. Caldwell in favor of the Appel- lees. Owl Lumber, Inc. had no interest in this appeal, but Mr. Caldwell does.

Dan O. Caldwell III, Thermopolis, WY, Representing Appellant.

John P. Worrall of Worrall, Bancroft & Greear, P.C., Worland, WY, Representing Appellees.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] The attorney for Appellant, Owl Lumber, Inc. (Owl Lumber), challenges the jurisdiction of the district court to have entertained, and then granted, Appellees', Martha Clark Cummings and Lisa Vice, motion for sanctions under W.R.C.P. 11(c)(1)(A).[2]

[¶ 2] We will reverse the order of the district court and remand with directions that the order imposing sanctions be vacated.

### ISSUES

[¶ 3] Owl Lumber states this issue:

1. Whether the district court had jurisdiction over Appellees' MOTION FOR SANCTIONS where Appellees had failed to comply with W.R.C.P. Rule 11(c)(1)(A)1 [*sic* ].

Appellees rephrase the issue thus:

1. The sole issue in this case is whether or not the District Court committed error when considering Appellees' Motion for Judgment on the Pleadings, Memorandum in Support of Motion and Letter of May 21, 1999, as sufficient compliance with Wyoming Rule of Civil Procedure 11(c)(1)(A) such as to justify the sanctions imposed by this Court [*sic* ] against counsel for the Appellant [Owl Lumber] in this matter.

### FACTS

[¶ 4] We note at the outset that the provisions of the parallel federal rule and Wyoming's rule are identical.

[¶ 5] On May 14, 1999, Owl Lumber filed its complaint for breach of contract and unjust enrichment. The complaint alleged that Mercil Construction (Mercil) entered into a contract with Appellees to construct one residence and to remodel a second property. Under that contract, the Appellees agreed to pay for goods and materials used in the contract work. Mercil received $5,152.73 in goods from Owl Lumber to do the work. Owl Lumber further alleged that Mercil had not paid for the goods in accordance with the contract between Mercil and Owl Lumber. Owl Lumber also alleged that the Appellees were unjustly enriched by receipt of goods provided by Owl Lumber to Mercil.

[¶ 6] On May 24, 1999, Appellees filed a motion for judgment on the pleadings, with respect to the unjust enrichment claim, based on our decision in *Bowles v. Sunrise Home Center, Inc.*, 847 P.2d 1002, 1004-5 (Wyo. 1993). In their brief, Appellees assert that the pleading was adequate to put Owl Lumber on notice of its Rule 11 claim. Mercil filed an answer to the complaint, putting Owl

2. **Rule 11. Signing of pleadings, motions, and other papers; representations to court; sanctions.**
. . . .
(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
(1) How initiated.
(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Lumber to its proof and filing a counterclaim against the Appellees for the sum of $25,739.84 (which included amounts owed by Mercil to Owl Lumber).

[¶ 7] On July 19, 1999, the district court entered judgment on the pleadings in favor of Appellees upon a stipulation of the parties. On January 11, 2000, Appellees filed a motion for sanctions. Appellees noted that, by letter dated March 5, 1999, they had advised Owl Lumber that its claim against them was specious (making no mention of W.R.C.P. 11, but rather referring to Wyo. Stat. Ann. § 29–1–311 (LexisNexis 2001), which provides for damages and/or penalties for the filing of false or frivolous liens). Owl Lumber answered that letter indicating it was going ahead with the claim. On May 21, 1999, after the complaint was served on Appellees, they wrote another letter to Owl Lumber and this time advised that they would be seeking sanctions under W.R.C.P. 11.

[¶ 8] On May 12, 2000, the district court issued a decision letter imposing sanctions against counsel for Owl Lumber and subsequently entered an order awarding attorney's fees to counsel for Appellees in the amount of $1,197.82. On July 11, 2000, a "Settlement Agreement and Mutual Release" was filed in the district court, memorializing an agreement reached between Appellees and Mercil that Appellees would remit $3,000.00, payable to Mercil, Owl Lumber, and JADECO. On July 18, 2000, an Agreement for Confession of Judgment was filed in the district court, which provided that Mercil would pay $5,000.00 to Owl Lumber.

[¶ 9] We take note that the pleadings also appear to establish that there were telephone calls concerning this issue between the attorneys involved in this case, but we do not view those calls as adding anything meaningful to the resolution of this case.

## DISCUSSION

[¶ 10] When construing rules of civil procedure, which are virtually identical to their federal counterparts, pertinent federal authority interpreting those rules is persuasive in our review process. *PanAmerican Mineral Services v. KLS*, 916 P.2d 986, 989 (Wyo.1996). With respect to the rule at issue here, Charles Alan Wright and Arthur R. Miller have summarized the pertinent authority as follows:

When the opposing party moves for sanctions, a "safe harbor" provision gives the party and attorneys against whom sanctions are sought the opportunity to withdraw the challenged paper. The opposing party must serve the sanctions motion according to the requirements of Rule 5 but may not file or present the motion to the court unless, within twenty-one days, the allegedly improper document is not corrected or withdrawn. Otherwise, the motion will be rejected. According to the Advisory Committee, this will encourage the withdrawal of improper papers since litigants will no longer be exposed to sanctions upon withdrawal of the challenged paper.

. . . .

The safe harbor period begins upon service of the sanctions motion, but "counsel are expected to give informal notice" of the potential violation before preparing the sanctions motion. A party's failure to give advance notice may result in a denial of its motion for sanctions.

After the court has entered judgment or dismissed claims, service of the sanctions motion and subsequent filing of the motion with the court may not comply with the safe harbor provision. If service was delayed until after the judgment, the motion will be rejected as the party served is unable to withdraw the improper papers or otherwise rectify the situation.

The rule also requires that a motion for Rule 11 sanctions be made separately from other motions. Thus, a party cannot include a Rule 11 motion in a motion to dismiss, a motion for summary judgment, or any other motion. Failure to comply with this requirement will result in denial of the motion.

. . . .

The Supreme Court in Cooter & Gell v. Hartmarx Corporation held that an appeals court should apply an abuse-of-discretion standard of review to all aspects of a Rule 11 determination. The Court rea-

soned that deferential review would promote Rule 11's purpose of streamlining the judicial process and discouraging satellite litigation. In addition, the standard was consistent with the standard selected by the Court in Pierce v. Underwood, for review of district court determinations of the United States position under Equal Access to Justice Act suits. However, the Court also said that legal errors by the district court constitute an abuse of discretion.

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1337 at 114–17 (Supp.2001) (footnotes omitted).

[¶ 11] We have recently concluded that we should no longer describe an abuse of discretion as an error of law under the circumstances because a court does not enjoy any discretion with respect to an error of law. *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998).

■■■ [¶ 12] In this instance, we view the district court's decision to impose sanctions, given the procedural posture of this case, as an error of law and, thus, not subject to review under the abuse of discretion standard. The Appellees' motion for judgment on the pleadings was not a substitute for serving a separate Rule 11 motion on Owl Lumber, the letter sent to Owl Lumber's counsel by Appellees' counsel was not a substitute for service of a motion for sanctions, and Appellees' motion for sanctions was not filed with the court until after a judgment was entered—when it was too late for Owl Lumber to exercise its option to withdraw or dismiss its claim against Appellees.[3] Appellees' papers did not meet "the strict procedural requirements of Rule 11." 5A Wright & Miller, *supra,* at 114–17 (Supp.2001). *Harding University v. Consulting Services Group,* 48 F.Supp.2d 765, 770 (N.D.Ill.1999) (quoting *Sears Roebuck & Company v. Sears Realty Company,* 932 F.Supp. 392, 408

(N.D.N.Y.1996)); *Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995); and Thomas M. Geisler Jr., *Proof of Violation of Federal Rule of Procedure 11 and of Sanctions Thereunder,* 47 Am.Jur. Proof of Facts 3d 241 § 14 (1998). For these reasons, we reverse the district court's order granting sanctions and remand to the district court with directions that the order be vacated and held for naught.

■■■ [¶ 13] For instructive purposes only, we take note of two other aspects of this matter, which may serve to provide guidance in future cases. First, had Appellees fully complied with the procedural requirements of Rule 11, we note that sanctions are not appropriate where an asserted violation of Rule 11 is *de minimis.*[4] As set out in Wright & Miller:

The Advisory Committee Notes list factors the judge should consider in deciding whether to impose a sanction, or what sanction to impose:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

5A Wright & Miller, *supra,* § 1336 at 109–10 (1990); 68–69 (Supp.2001); and *see Harding University,* 48 F.Supp.2d 765 at 772; *Stepanek v. Delta County,* 940 P.2d 364, 370–71 (Colo.1997); *Zuk v. Eastern Pennsylvania Psychiatric Institute of the Medical College*

---

**3.** Failure to comply with the procedural requirements set out in Rule 11 (for Wyoming the 1994 amendments, which are referred to in the pertinent authorities as the 1993 amendments to the F.R.C.P.) is likely the result of inattention (inadequate research) to the 1994 amendments. *See* Thomas M. Geisler Jr., *Proof of Violation of Fed-*

*eral Rule of Procedure 11 and of Sanctions Thereunder, supra,* at § 21 (1998 and Supp.2000).

**4.** Gregory P. Joseph, *The Federal Law of Litigation Abuse,* § 15(B) (Technical or De Minimis Violations) at 251–53 (3rd ed.2000).

*of Pennsylvania,* 103 F.3d 294, 300–01 (3d Cir.1996); and *Bradgate Associates, Inc. v. Fellows, Read & Associates,* 999 F.2d 745, 752–53 (3rd Cir.1993). In this case, none of those factors appears to have relevance, and clearly, Appellees would have remained as defendants in this matter, even if Owl Lumber's counsel had acted more promptly in conceding his error. Moreover, Owl Lumber's claims were not "groundless," though very thorough research probably would have convinced him that Owl Lumber did not have a direct claim against Appellees, but only a claim against Mercil (which had a claim against Appellees).

[¶ 14] Second, sanctions are not intended to be a fee-shifting device. A district court should consider monetary, as well as non-monetary, sanctions and any monetary sanction should be carefully tailored to the violation under consideration. 5A Wright & Miller, *supra,* § 1336 at 69–70 (Supp.2001); and *see Harding University,* 48 F.Supp.2d 765 at 772–73. In this instance, it appears that the sanction was used only as a fee-shifting device and that Appellees were rewarded, rather than Owl Lumber's counsel having been appropriately punished. In many instances, the sanctions may be levied in favor of the court rather than a party, or a combination of sanctions favoring the court and a party. Other alternative sanctions include admonition, censure, additional mandatory Continuing Legal Education, and referral to the Board of Professional Responsibility. *See* Geisler, *Proof of Violation of Federal Rule of Procedure 11 and of Sanctions Thereunder, supra,* at § 21; and Gregory P. Joseph, *The Federal Law of Litigation Abuse,* § 16 (3rd ed.2000).

[¶ 15] The order of the district court is reversed and this matter is remanded to the district court with direction that the order imposing sanctions be vacated.

