2001 WY 107

**John C. DEWEY and Elizabeth A. Dewey, husband and wife, Appellants (Plaintiffs),**

v.

**Carlton P. DEWEY, Appellee (Defendant).**

**No. 00–334.**

Supreme Court of Wyoming.

Nov. 7, 2001.

Rehearing Denied Dec. 4, 2001.

James P. Castberg, Sheridan, WY, Representing Appellants.

Robert W. Brown of Lonabaugh and Riggs, Sheridan, WY, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In November 1998, John C. and Elizabeth A. Dewey (the Deweys), pro se, sued their son, Carlton P. Dewey (Carlton Dewey), for allegedly breaching a partnership dissolution agreement. The district court granted summary judgment to Carlton Dewey and ultimately sanctioned the Deweys $9,410.00 in attorneys' fees and $164.16 in costs pursuant to W.R.C.P. 11. The Deweys, now represented by counsel, appeal from the district court's order imposing sanctions. We affirm in part, reverse in part, and remand for modification consistent with this opinion.

## ISSUE

[¶ 2] The Deweys raise a single issue on appeal:

> Was it an abuse of the trial court's discretion in granting defendant's motion for sanctions under Rule 11 W.R.C.P. and awarding defendant a money judgment against the plaintiffs?

Carlton Dewey phrases the issue in substantially the same manner.

## FACTS

[¶ 3] The parties were partners in a Sheridan ranching operation until 1994 when they entered into a Partnership Dissolution Agreement. Pursuant to this dissolution agreement, Carlton Dewey received certain real property that became his "sole and separate" property. However, the dissolution agreement provided, in pertinent part:

> 20. *Right of First Refusal.* John and Elizabeth shall have a right of first refusal on the real property which shall become the sole and separate real property of Carl pursuant to this agreement. Upon listing any of the property for sale with a real estate agent, Carl will immediately send a copy of the listing agreement to John and Elizabeth. Whenever Carl receives a written, bona fide offer for the purchase of any of the real property which shall become his sole and separate real property pursuant to this agreement, and he accepts the written, bona fide offer, he shall then deliver, by certified mail, a copy of the accepted offer to John and Elizabeth or their attorneys. . . . John and Elizabeth must then notify Carl in writing, within fourteen (14) days after they or their designated attorney receive a copy of the bona fide written offer that they elect to exercise the right of first refusal by delivering to Carl or his real estate agent a written notice of their exercise of the right of first refusal. They shall then have the opportunity to buy the same real property for the same price and

on the same terms as set forth in the original written offer presented to Carl by a third party. If John and Elizabeth do not deliver to Carl a written notice of their exercise of their right of first refusal within fourteen (14) days . . . Carl may sell the real property to the third party offeror for the price and on the terms and conditions stated in the third party offeror's original offer. If the sale to the third party offeror does not close for any reason, John and Elizabeth may exercise their right of first refusal upon Carl's receipt of a subsequent bona fide offer.

[¶ 4] In 1994, it appears that Carlton Dewey received several offers to purchase individual parcels of the subject property.[1] The Deweys exercised their right of first refusal as to all of the bona fide offers[2] Carlton Dewey accepted for the purchase of these parcels.

[¶ 5] In November 1998, the Deweys, pro se, filed a complaint alleging that Carlton Dewey breached the dissolution agreement by entering into a 1998 oil and gas lease with Farleigh Oil Properties, three grazing leases, a lease of hunting rights, and a gravel extraction and stockpiling agreement. The Deweys claimed that each of these transactions triggered their right of first refusal pursuant to the dissolution agreement and Carlton Dewey breached the dissolution agreement by failing to provide them the requisite notice and an opportunity to exercise the right of first refusal as to each transaction. The Deweys sought $1,850,000.00 in damages due to the alleged breach.

[¶ 6] Counsel for Carlton Dewey filed an answer December 4, 1998, and mailed a December 30, 1998, letter advising the Deweys that if the Deweys did not withdraw their "baseless" complaint by January 19, 1999, counsel would file a motion for sanctions, a copy of which was attached to the letter. The motion for sanctions specifically referred to W.R.C.P. 11 and Wyo. Stat. Ann. § 1–14–

---

1. The offers were to purchase the individual parcels entirely, rather than lease a portion of a parcel for a particular purpose.

2. In a 1994 declaratory judgment action initiated by the Deweys, the district court concluded that

one such offer was not "bona fide" because the offer sent to the Deweys did not contain all of the offer's terms. The district court also found that the right of first refusal did not require that the real estate be listed with a real estate agent.

128 (LexisNexis 2001),[3] asserting that the Deweys' complaint was filed for an improper purpose and that the claims were not warranted by existing law or a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

[¶ 7] On January 15, 1999, the Deweys filed a motion to amend their complaint to add a claim regarding another oil and gas lease and increase their alleged damages to $2,850,000.00 due to the additional lease. The Deweys also claimed that opposing counsel had engaged in criminal "blackmail," "intimidation and coercion," "conspiracy" and professional misconduct by virtue of the sanctions advisement letter and accompanying motion for sanctions.

[¶ 8] On January 20, 1999, the Deweys filed a Motion for Summary Judgment. The Deweys argued that there were no genuine issues of material fact regarding Carlton Dewey's alleged breach of the dissolution agreement or the damages claimed in the Deweys' complaint. The Deweys reiterated their "blackmail" and other allegations against counsel for Carlton Dewey, and requested that the district court amend their complaint and institute disciplinary actions against counsel for Carlton Dewey. In their accompanying memorandum, the Deweys argued, albeit quite confusingly, that real property is comprised of anything on, above (including the sky), or below the land and any rights associated with the property. According to the Deweys, because a lease constitutes a conveyance, a lease of any interest in, or related to, the subject real property triggered their right of first refusal.

[¶ 9] On January 28, 1999, the Deweys filed a second motion to amend their complaint to add a claim regarding a $180,000.00 mortgage between Carlton Dewey and the State Loan and Investment Board and to increase their alleged damages by $180,000.00. The Deweys subsequently filed a Motion to Impound Income of All Sold Leases.

[¶ 10] The district court denied both of the Deweys' motions to amend their complaint, as well as their summary judgment motion. The Deweys appealed those rulings to this Court, which appeal was dismissed because the district court's orders were not appealable pursuant to W.R.A.P. 1.05. On February 10, 1999, Carlton Dewey filed a Motion for Sanctions identical to the motion attached to the December 30, 1998, advisement letter.

[¶ 11] On May 10, 1999, Carlton Dewey filed a Motion for Summary Judgment which the district court granted in an order filed September 1, 1999. The district court took Carlton Dewey's motion for sanctions under advisement "until such time as Plaintiffs' time to appeal this decision has expired or until a Wyoming Supreme Court opinion is issued."

[¶ 12] The Deweys appealed the district court's order granting summary judgment in favor of Carlton Dewey. On March 28, 2000, this Court dismissed the appeal because the Deweys violated W.R.A.P. 3.05(e) and failed "to make record references to the record on appeal when discussing the 'facts' of their case...."[4]

[¶ 13] On May 11, 2000, Carlton Dewey filed a Renewed Motion for Sanctions. The district court imposed sanctions in a September 2000 order. In that order, the district court determined that the Deweys violated W.R.C.P. 11 essentially because their claims were not warranted by existing law, and imposed sanctions in the amount of $9,410.00 in attorneys' fees and $164.16 in costs. The Deweys filed a motion for reconsideration

---

3. In *Squillace v. Kelley*, 990 P.2d 497, 501 (Wyo. 1999), we held that Wyo. Stat. Ann. § 1–14–128 was unconstitutional. Nevertheless, the district court imposed sanctions in the instant case only pursuant to W.R.C.P. 11.

4. In April 2000, this Court sanctioned the Deweys, acting pro se, in their appeal of an insurance coverage case that arose from a transaction to purchase real property. *Dewey Family Trust v.* *Mountain West Farm Bureau Mut. Ins. Co.*, 3 P.3d 833, 836–37 (Wyo.2000). We summarily affirmed the district court because the Deweys' brief did not include cogent argument or cite to pertinent authority, concluding that the Deweys had no "reasonable cause" for their appeal. While "normally reluctant to impose sanctions," we awarded the appellee attorneys' fees and costs. *Id.* at 837.

consisting of seventy-three pages, including attachments.

[¶ 14] The Deweys, now represented by counsel, appeal from the district court's order imposing sanctions.

### STANDARD OF REVIEW

[¶ 15] According to W.R.C.P. 11(b)(2), an "unrepresented party" submitting a pleading to the court is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the "claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" W.R.C.P. 11(c) states that, after compliance with the procedural components of the rule,[5] notice, a reasonable opportunity to respond, and a determination by the district court that W.R.C.P. 11(b) was violated, the district court may impose an appropriate sanction upon the party who violated, or who is responsible for violating, the rule. W.R.C.P. 11(c)(2) provides:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.

An objective standard—reasonableness under the circumstances—is used to determine whether the duty of a "reasonable inquiry" has been satisfied. *Meyer v. Mulligan*, 889 P.2d 509, 517 (Wyo.1995).

[¶ 16] The purpose of W.R.C.P. 11 is to deter baseless filings and streamline the administration and procedure of courts. *Meyer*, 889 P.2d at 517 (*quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990)). Rule 11 is not a fee-shifting statute. *Cooter & Gell*, 496 U.S. at 409, 110 S.Ct. 2447. "A district court should consider monetary, as well as non-monetary, sanctions and any monetary sanction should be carefully tailored to the violation under consideration." *Caldwell v. Cummings*, 2001 WY 106, ¶ 14, 33 P.3d 1138, at 1143 (Wyo.2001) (*citing* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1336 at 69–70 (Supp.2001)).

[¶ 17] A pro se litigant is treated no differently than he would be if he were represented by an attorney. *In Interest of KMM*, 957 P.2d 296, 298 (Wyo.1998); *Matter of GP*, 679 P.2d 976, 984 (Wyo.1984).

"One has the right to appear pro se; but when a person chooses to do so, he must be held to the same standard as if he were represented by counsel. He cannot expect the court or the attorneys for other parties to present his case. He cannot be given an advantage by virtue of his pro se appearance, and he cannot be placed at a disadvantage thereby other than whatever disadvantage results from his decision to proceed without the assistance of counsel."

*In Interest of KMM*, 957 P.2d at 298 (*quoting Johnson v. Aetna Cas. and Sur. Co. of Hartford, Conn.*, 630 P.2d 514, 517 (Wyo.), *appeal dismissed and cert. denied*, 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981)). Although a certain leniency is accorded to pro se litigants, the proper administration of justice requires reasonable adherence to the same rules of evidence, procedure and requirements of the court as expected of those qualified to practice law. *In Interest of KMM*, 957 P.2d at 298; *Matter of GP*, 679 P.2d at 984 (*quoting Lombardi v. Citizens Nat. Trust & Sav. Bank of Los Angeles*, 137 Cal.App.2d 206, 289 P.2d 823, 824 (1955)). "There is no more basic requirement than that a complaint must state a cause of ac-

---

5. It appears from the record on appeal that Carlton Dewey satisfied the requisite procedures in filing his motion for sanctions.

tion." *Apodaca v. Ommen,* 807 P.2d 939, 943 (Wyo.1991).

[¶ 18] We review district court sanctions imposed[6] pursuant to W.R.C.P. 11 for an abuse of discretion. *LC v. TL,* 870 P.2d 374, 381 (Wyo.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

> "[T]he core of our inquiry must reach 'the question of reasonableness of the choice made by the trial court.' *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' *Id.* (*quoting Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236, 1238 (1985)); *Basolo [v. Basolo],* 907 P.2d [348] at 353 [ (Wyo. 1995) ]. We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious."

*Young v. HAC, LLC,* 2001 WY 50, ¶ 6, 24 P.3d 1142, 1144 (Wyo.2001) (*quoting Carlton v. Carlton,* 997 P.2d 1028, 1031 (Wyo.2000)). To some degree, our deference extends to the district court's determination that a pleading was not warranted by existing law or a good faith argument for changing the law, although a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell,* 496 U.S. at 399–405, 110 S.Ct. 2447. *See also Dodd Ins. Services, Inc. v. Royal Ins. Co. of America,* 935 F.2d 1152, 1155 (10th Cir.1991).[7]

## DISCUSSION

[¶ 19] The Deweys essentially claimed in their complaint, pleadings, and in subsequent hearings that leasing any interest in, or related to, Carlton Dewey's real property (be it gravel or soil, oil or gas, grass, hunting rights, etc.) to another party trig-

gered the Deweys' right of first refusal. In other words, each lease conveyed "real property" to each lessee for money, resulting in a "sale" of real property. On appeal, the Deweys focus primarily on whether each transaction involved the transfer of a real property interest. The Deweys cite no legal authority in advancing such an argument regarding the materials and stockpiling agreement or the hunting lease, except to equate each transaction with a conveyance.

[¶ 20] We first look to the contractual language to determine the parties' intent regarding what circumstances would trigger the Deweys' right of first refusal. A right of first refusal gives " 'a privilege to purchase on a condition precedent which is the formulated desire of the owner to sell....' " *Chapman v. Mutual Life Ins. Co. of New York,* 800 P.2d 1147, 1150 (Wyo.1990) (*quoting Hartnett v. Jones,* 629 P.2d 1357, 1362 n. 1 (Wyo.1981)). Once that condition precedent is met, the right of first refusal "ripens" into an option and contract law pertaining to options applied. *Chapman,* 800 P.2d at 1150. "If the language of a contract is plain and unequivocal, that language is controlling." *Bensinger v. Scott,* 625 P.2d 775, 778 (Wyo. 1981).

[¶ 21] The parties clearly and unequivocally contemplated in paragraph 20 of the dissolution agreement that Carlton Dewey's acceptance of a bona fide offer for the sale of the subject real property would trigger the Deweys' right of first refusal. The contract provides that upon receiving a written, bona fide offer to "purchase" this real property, and Carlton Dewey's acceptance of that offer, Carlton Dewey must provide the requisite notice to the Deweys. It similarly states that upon listing the property for "sale" with a real estate agent, Carlton Dewey would send the listing agreement to the Deweys. The Deweys, then, would have the same opportunity to "buy" the real property as provided for in the agreement and if they did not exercise that right, Carlton Dewey could

---

6. We recently established several factors that a district court should prospectively consider in imposing W.R.C.P. 11 sanctions. *See Caldwell,* 2001 WY 106, ¶¶ 13–14, 33 P.3d at 1142–1143.

7. Federal "precedent offers able guidance in review of decisions concerning Rule 11." *Meyer,* 889 P.2d at 517.

then "sell" the real property to the third party. If a "sale" to the third party did not occur, the Deweys' right of first refusal would be preserved as to subsequent bona fide offers.

[¶ 22] In *Bensinger*, 625 P.2d at 777, the parties provided in one contract for a right of first refusal upon the "sale of all or any part of the first refusal property" and in a second contract one party agreed not to "sell or transfer all or any part of" the first refusal property without first offering it to the other party. We held that the parties' intent in using the word "transfer" in addition to the word "sale," as well as the phrase "all or any part" in referring to the first refusal property, was more inclusive than if the parties had merely used the term "sale." *Id.* We concluded that pursuant to this language, a non-exclusive easement, as opposed to a "sale," was sufficient to trigger the right of first refusal at issue. *Id. See also Rainbow Oil Co. v. Christmann*, 656 P.2d 538, 543–44 (Wyo.1982) (finding that "sale" in context of right of first refusal is to "receive a narrower interpretation than is the term 'transfer.'") Indeed, a "sale" in the context of a right of first refusal is a "transfer for value of a significant interest in the subject property to a stranger who thereby gains substantial [ownership or] control over the subject property." *Raymond v. Steen*, 882 P.2d 852, 857 (Wyo.1994) (*citing Prince v. Elm Inv. Co., Inc.*, 649 P.2d 820, 823 (Utah 1982)).

[¶ 23] In this context, we consider the nature and extent of Carlton Dewey's transactions regarding the subject real property. The district court denied the Deweys' motions to amend their complaint, a determination not altered in any subsequent appeal; therefore, we will only consider the transactions referenced in the Deweys' complaint. On April 27, 1994, Carlton Dewey entered into a twenty-year hunting lease agreement with the Double B Ranch in return for a promissory note granted to Carlton Dewey. The hunting agreement leases a portion of Carlton Dewey's real property to Double B Ranch solely for hunting purposes. The par-

ties are to agree on the total number of hunting permits to be issued each year, with the lessor retaining one-third of those permits to otherwise use or sell. The lessee may remove unauthorized persons hunting on the property, and may construct goose blinds, a river trolley, and a trap shooting area, etc. on the property.

[¶ 24] On January 27, 1997, Carlton Dewey entered into a materials agreement and accompanying stockpiling agreement with the Wyoming Department of Transportation. These agreements provide that between January 27, 1997, and January 1, 1999 (with an optional one-year extension), the Department of Transportation can enter a designated portion of Carlton Dewey's property to explore for and extract sand, stone, gravel, or soil for its highway projects, and stockpile or process the same on the property.

[¶ 25] Effective November 19, 1997, Carlton Dewey entered into a six-year oil and gas lease (five-year extension optional) with Farleigh Oil Properties. The oil and gas lease grants Farleigh Oil Properties the right to survey, mine, and operate for oil and gas on Carlton Dewey's property to a specified depth, in exchange for a portion of the proceeds resulting from any oil and gas sold or produced. Farleigh Oil Properties may place structures on the property to assist its operations under the agreement.[8] The parties focus their arguments primarily on whether an oil and gas lease actually conveys a real property interest, as opposed to some other interest. However, we find that the contractual language, and the legal definition of "sale" in the context of that language, is sufficient to resolve the issue without analyzing the nature of the interest itself.

[¶ 26] In their complaint, the Deweys reference what appear to be three grazing leases between Carlton Dewey and parties named Perry, Fort, and Peddicord. Copies of these leases are apparently not contained in the record, and neither party cites to the record in referring to these leases. The Deweys present no cogent argument on appeal regarding these leases, but essentially

8. When the Deweys exercised their right of first refusal regarding a forty-acre tract of Carlton Dewey's property, Carlton Dewey actually as-

signed the oil and gas lease to the Deweys, to the extent that the oil and gas lease related to the forty-acre tract.

argue in the memorandum accompanying their motion for summary judgment that because grass is attached to real property, a lessee's cattle convert or transfer the real property "grass" by eating it and subsequently vacating the leased property when the lessee sells the cattle. According to the Deweys, this somehow equates to a transfer of real property.

[¶ 27] None of these transactions come close, as a matter of law, to approaching transfers involving significant interests which result in another party gaining substantial ownership or control over the subject property, especially considering the contractual language utilized by the parties. We cannot conclude that, under the limited circumstances of this case, the district court abused its discretion in finding the Deweys' claims were not warranted by existing law, particularly the legal definition of a "sale." Considering these same circumstances, it does not appear, after examining the record, that the Deweys' claims were warranted by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

 [¶ 28] The Deweys do not argue that the district court abused its discretion as to the nature or amount of the sanctions imposed. However, it appears from the record that the district court included fees and/or costs claimed by Carlton Dewey for defending the Deweys' appeal from the district court's denial of the Deweys' motion for summary judgment, and the Deweys' appeal from the district court's grant of summary judgment ,in favor of Carlton Dewey, in the amount it ultimately imposed as W.R.C.P. 11 sanctions. "On its face, Rule 11 does not apply to appellate proceedings." *Cooter &*

*Gell,* 496 U.S. at 406, 110 S.Ct. 2447. "Neither the language of Rule 11 nor the Advisory Committee Note suggests that the Rule could require payment for any activities outside the context of district court proceedings." *Id.* In *Cooter & Gell,* an appeal from the imposition of Rule 11 sanctions, the respondents argued that fees incurred "because of the filing" necessarily included fees incurred on appeal because had a lawsuit not been filed, there would have been no appellate expenses. The United States Supreme Court rejected this argument, finding that Rule 11 "is more sensibly understood as permitting an award only of those expenses directly caused by the filing, logically, those at the trial level." *Id.* "Limiting Rule 11's scope in this manner accords with the policy of not discouraging meritorious appeals." *Id.* at 408. We find this reasoning persuasive.

[¶ 29] A litigant's conduct on appeal is governed by the Wyoming Rules of Appellate Procedure, wherein this Court is empowered to impose sanctions for frivolous appeals. Accordingly, the sanctions imposed pursuant to W.R.C.P. 11 in this case should be reduced by the amount of the sanctions attributable to the fees and/or costs Carlton Dewey claimed to have incurred in appellate proceedings. The district court's order imposing sanctions is otherwise affirmed.

[¶ 30] We affirm in part, reverse in part, and remand for modification consistent with this opinion.