In the Matter of the Claim of William J. MORIARITY, and W.J.M., Inc.

William J. MORIARITY, and W.J.M. Inc., Appellant,

v.

STATE of Wyoming, ex rel. the Honorable John P. McBRIDE, Insurance Commissioner, Appellee (Petitioner),

v.

OLD FAITHFUL LIFE INSURANCE COMPANY, Appellee (Respondent).

No. 94–145.

Supreme Court of Wyoming.

July 26, 1995.

Charles E. Graves of Graves & Villemez, P.C., Cheyenne, Timothy C. Kingston, Cheyenne, for appellant.

William M. McKellar and Peter Michael of Boley & McKellar, P.C., Cheyenne, for appellee McBride.

Brent R. Cohen, Andrea Richard, Franklin D. O'Loughlin, and Joel A. Glover of Rothgerber, Appel, Powers & Johnson, Cheyenne, for appellee Wyoming Life and Health Ins. Guar. Ass'n.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The issue asserted in this case is whether *res judicata* or the doctrine of collateral estoppel prevents William J. Moriarity and W.J.M., Inc. (Moriarity) from asserting a secured claim in the receivership of Old

Faithful Life Insurance Company. In an Order Granting Receiver's Motion to Clarify Judgment, which addressed an earlier order denying the motion of the Receiver to reject a contract between Old Faithful and Moriarity, the court concluded there was no further obligation by the Liquidator under the Moriarity contract after the order of liquidation was entered and, pursuant to the liquidation and rehabilitation provisions in the Wyoming Insurance Code, WYO.STAT. § 26–1–101 to –48–112 (1991 & Supp.1994), Moriarity's only remedy was to present a claim to the Receiver. In resolving the motion to clarify, the court appeared to have articulated Moriarity's status by stating that he did not qualify for any priority exception to the act. When Moriarity subsequently filed a claim and then objected to his classification as an unsecured creditor, the court concluded that issue had been resolved by the earlier order and, under either *res judicata* or the doctrine of collateral estoppel, Moriarity was foreclosed from seeking a priority classification for his claim. We hold that the status of Moriarity with respect to the classification of his claim was not at issue in the earlier proceedings in this case and, for that reason, his effort to have his claim classified as a secured claim is not barred by *res judicata* or the doctrine of collateral estoppel, nor has the prior ruling become the law of this case. We reverse and remand for further proceedings in accordance with this opinion.

In his Brief of Appellant, Moriarity states the issue as:

Did the District Court err in disallowing the Appellant's Objection to the Liquidator of Old Faithful Life Insurance Company's Initial Report and Recommendations on Claims on the basis that it was barred by the doctrines of *res judicata* and collateral estoppel?

The issues are stated in the Brief of Appellee Receiver in this way:

1) Appellant's (hereinafter "Moriarity") appeal to this Court is untimely because Moriarity failed to appeal from the District Court's December 7, 1992, Order Granting Receiver's Motion to Clarify Judgment.

2) Despite the untimeliness of this appeal, the district court was correct when it disallowed Moriarity's Objection to the Liquidator's Initial Report and Recommendation on Claims based on *res judicata* and collateral estoppel.

In the Brief of Appellee Wyoming Life and Health Insurance Guaranty Association, the issue is recited in this language:

Did the District Court properly disallow Appellant Moriarity's claim on the grounds that the issue had previously been determined by the Court's Order of December 7, 1992, and Appellant was precluded from re-litigating the issue by *res judicata* and collateral estoppel?

The genesis of this case was an Employment Agreement between Moriarity and Old Faithful Life Insurance Company (Old Faithful) dated April 1, 1990. On May 1, 1991, the Employment Agreement was converted into a Servicing Agreement. Under this latter agreement, Moriarity was to receive compensation for servicing Old Faithful's mortgage portfolio, and it provided for some additional financial benefits to Moriarity should the portfolio be sold. While the Servicing Agreement still was in effect, Old Faithful was placed in receivership by the Wyoming Department of Insurance for rehabilitation of its financial difficulties. This occurred on February 19, 1992 and, on May 29, 1992, a Motion of Receiver to Reject Executory Contract with William Moriarity was filed. The Receiver sought permission of the court to reject the Servicing Agreement and also asked the court to compel Moriarity to return a 1989 Cadillac and some computer equipment which Moriarity asserted were conveyed to him by Old Faithful pursuant to the Servicing Agreement. In addition, the Receiver sought to require Moriarity to vacate the rent-free office space he was occupying in the Old Faithful Building. Moriarity claimed the office space also was consideration under the Servicing Agreement.

On June 9, 1992, a Motion of William Moriarity to Require Receiver to Complete Terms of Buy Out of Employment Contract (Specific Performance) was filed. The court set the matter for hearing on July 17, 1992. After the hearing, in a decision letter dated August 25, 1992 and filed on September 1, 1992, the court denied the Receiver's motion

of May 29, 1992 and granted Moriarity's motion. The Order Denying Motion of Receiver to Reject Executory Contract with William Moriarity and Granting Motion of William Moriarity to Require Receiver to Complete Terms of Buy Out Employment Contract (Specific Performance) was entered on October 27, 1992.[1]

A chronology of the procedural maneuvering from that point on is useful:

11/4/92 Petition for Order of Liquidation and Declaration of Insolvency

11/6/92 Receiver's Motion to Clarify or Amend Judgment or Order or in the Alternative to Grant Relief from a Judgment or Order Previously Entered (hereinafter Motion to Clarify)

11/13/92 Response of William Moriarity to Receiver's Motion to Clarify or Amend Judgment or Order or in the Alternative to Grant Relief from a Judgment or Order Previously Entered

11/13/92 Motion of William Moriarity for Order to Show Cause Why David E. Wilson Should Not Be Found in Contempt of Court

11/13/92 Joinder by Wyoming Life and Health Insurance Guaranty Association in Receiver's Motion to Clarify or Amend Judgment or Order

11/16/92 Order of Liquidation and Declaration of Insolvency (hereinafter Liquidation Order)

12/3/92 Hearing on Receiver's Motion to Clarify or Amend Judgment or Order or in the Alternative to Grant Relief from a Judgment or Order Previously Entered and Joinder by Wyoming Life and Health Insurance Guaranty Association in Receiver's Motion to Clarify or Amend Judgment or Order

12/7/92 Order Granting Receiver's Motion to Clarify Judgment (hereinafter Order to Clarify Judgment)

12/29/92 Order Approving Proof of Claims and Notice to Creditors and Establishing Claims Bar Date

10/15/93 Liquidator's Initial Report and Recommendation on Claims

11/1/93 Order on Liquidator's Initial Report and Recommendation on Claims

11/29/93 Objection to Liquidator's Report and Recommendation Regarding Claim of William J. Moriarity (Claim No. 2249)

4/1/94 Hearing on Objection to Liquidator's Report and Recommendation Regarding Claim of William J. Moriarity (Claim No. 2249) [and other objections]

5/11/94 Order Ruling on Objections to Liquidator's Initial Report and Recommendations on Claims

On November 4, 1992, the Insurance Commissioner filed a Petition for Order of Liquidation and Declaration of Insolvency, in which the court was requested to appoint the Insurance Commissioner as Liquidator of all of Old Faithful's assets. The petition asserted that the company was financially insolvent and any further attempts at rehabilitation would be futile. Before the court could act upon the Petition for Order of Liquidation and Declaration of Insolvency, the Receiver filed the Motion to Clarify. The Receiver averred that title to the Cadillac and the computer equipment had been transferred to Moriarity as required by the earlier order of October 27, 1992, but the Receiver contended Moriarity's claim of a right to rent-free office

---

1. In the part pertinent to this case, the order stated:

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion of receiver to reject executory contract with William Moriarity be and it is hereby denied.

IT IS FURTHER ORDERED that the motion of William Moriarity to require receiver to complete the terms of buy out of employment contract (specific performance) be and it is hereby granted and the receiver shall deliver to William Moriarity all documents necessary to transfer title to the 1989 Cadillac automobile (with telephone); certain computer equipment; and office space as is described in the motion of William Moriarity.

space and a right to service the mortgage portfolio until April 1, 1994 was not granted in the earlier order. The Receiver requested that the court clarify the meaning of its earlier order with regard to any "prospective" effect or, alternatively, grant the Receiver relief from that order.[2]

In his response, Moriarity asserted that the order, entered on October 27, 1992 was definitive in requiring the Receiver to carry out the terms of the May 1, 1991 Servicing Agreement and provide him office space until April 1, 1994. Moriarity filed that response on November 13, 1992, together with his Motion of William Moriarity for Order to Show Cause Why David E. Wilson Should Not Be Found in Contempt of Court and other supporting documents.

On the same date Moriarity's response was filed, Wyoming Life and Health Insurance Guaranty Association (Guaranty Association) filed its joinder in the Motion to Clarify.[3] In its pleading, Guaranty Association stated with respect to Moriarity's "prospective" right to service mortgages and enjoy free office space:

> Moriarity has no right to a continuing interest in Old Faithful's mortgage portfolio and building after liquidation. **No claim has been made that Moriarity has perfected a lien or security interest in either of these assets. Rather, to the extent a claim exists under the settlement agreement, it can only be asserted as provided for by statute.** (Emphasis added.)

Guaranty Association specifically requested Moriarity's contract claims be pursued under the requirements of the liquidation provisions of the Wyoming Insurance Code (Wyo.Stat. §§ 26–1–101 to –48–112 (1991 and Supp. 1994)). The Guaranty Association asserted that, if this were done, Moriarity would receive procedural and substantive due process through the hearing provided pursuant to those provisions.

Before the court acted on these motions addressed to its order of October 27, 1992, it entered the Liquidation Order, pursuant to which the Insurance Commissioner was appointed as Liquidator of Old Faithful. As Liquidator, the Insurance Commissioner was authorized to take possession, and dispose, of the assets of Old Faithful in order to pay off the company's creditors on a priority and *pro rata* basis. The statute provides for the classification of creditors and sets the priority for payment.[4]

---

**2.** With respect to relief in the alternative, the Receiver stated in the Receiver's Motion to Clarify or Amend Judgment or Order or in the Alternative to Grant Relief from a Judgment or Order Previously Entered (Motion to Clarify):

> In order to insure the proper administration of the estate and to afford maximum financial protection to policyholders and shareholders, it is necessary for this Court to clearly enunciate that Mr. Moriarity does not have an ongoing leasehold interest in Old Faithful' [sic] building through April 1, 1994, and that he has no continuing financial interest in, or monetary claim against, Old Faithful's mortgage portfolio or the servicing of the portfolio.

**3.** Wyoming Life and Health Insurance Guaranty Association became a party and was interested in the resolution of questions concerning the Servicing Agreement because, if the court were to issue an order of liquidation, Old Faithful's annuities and insurance policies would become financial obligations of the Association.

**4.** Wyo.Stat. § 26–28–125 (1991) provides with respect to the distribution of the assets of an insolvent insurer:

> (a) The priorities of distribution of general assets from the company's estate is as follows:

(i) The costs and expenses of the administration, insolvency, liquidation and rehabilitation, including the claims handling expenses of the Wyoming Insurance Guaranty Association and of any similar organization in any other state as prescribed in W.S. 26–31–101 through 26–31–117;

(ii) Wages actually owing to employees, other than officers of insurers, for services rendered within three (3) months prior to the date of commencement of a proceeding against the insurer under this chapter, but not exceeding one thousand dollars ($1,000.00) to each employee and secured claims, including claims for taxes and debts due the federal or any state or local government which are secured by liens perfected prior to the commencement of delinquency proceedings;

(iii) Claims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the company, as set forth in W.S. 26–28–114 through 26–28–117 and claims of the Wyoming Insurance Guaranty Association and any similar organization in another state as prescribed in W.S. 26–31–110;

(iv) All other claims of general creditors not falling within any other priority under this

On December 3, 1992, the court held a hearing on the Motion to Clarify. The Order to Clarify Judgment was entered on December 7, 1992, after the Liquidation Order, but prior to the institution of the claims filing procedure and, certainly, prior to any hearing for creditors who wished to be heard with respect to the recommendation of the Receiver as to priorities.[5] The material language in the Order to Clarify Judgment includes these findings:

6) The Wyoming Liquidation and Rehabilitation Act ("Act"), W.S. § 26–28–101 *et. seq.*, **sets forth the exclusive means by which claims, including Moriarity's contractual claim, might be presented and the exclusive payment priority of such claims** from the company's assets. (Emphasis added.)

7) Moriarity asserts that he has undertaken a fiduciary duty to service the mortgage portfolio; a duty which Old Faithful created and conferred upon Moriarity. Moriarity contends that servicing the mortgage portfolio is a function that someone has to carry out, and that he [sic] lawfully bound and obligated to do just that, dispite [sic] the order of liquidation.

8) Moriarity does not attain any such elevated position, *i.e.*, as a fiduciary, other than a contract creditor.

9) It never was and it is not now the Court's intention to pass to Moriarity any preferential treatment over all the creditors, in derogation to the priorities established under the Act. It was solely the intent of the Court to establish some of the contractual rights afforded Moriarity.

\*　　\*　　\*　　\*　　\*　　\*

11) Moriarity interprets the Court's decision letter and subsequent order as granting him preferential treatment over all other creditors, thereby violating the priorities established by the Act.

12) The court cannot violate the Act by creating a special preference for Moriarity. The Moriarity contract is just that—a contract. **Moriarity is subject to the same claims procedure and priority system as are the many other claimants against Old Faithful.** (Emphasis added.)

13) Moriarity does not qualify for priority exception; *i.e.*, **as a secured creditor or as one who holds a judgment lien.** (Emphasis added.)

14) The legislature has determined that the State of Wyoming, through the Insurance Commissioner, has the duty to deal with insolvent companies. The Commissioner is bound to pursue the business of the company, including its sale. Moriarity,

section, including claims for taxes and debts due the federal government or any state or local government which are not secured claims;

(v) Claims of guarantee association certificate holders, guarantee capital shareholders and surplus note holders;

(vi) Proprietary claims of shareholders, members or other owners.

5. The claims process is established by Wyo.Stat. § 26–28–116 (1991), which provides:

(a) All claims against an insurer against which delinquency proceedings are in progress shall set forth in reasonable detail the amount of the claim, or the basis upon which the amount can be ascertained, the facts upon which the claim is based and the priorities asserted, if any. All such claims shall be verified by the affidavit of the claimant, or someone authorized to act on his behalf and having knowledge of the facts, and shall be supported by documents material thereto.

(b) All claims filed in this state shall be filed with the receiver, whether domiciliary or ancillary, in this state, on or before the last date for filing as specified in this chapter.

(c) Within ten (10) days from the date of receipt of any claim, or within any further period as the court, for good cause shown, determines, the receiver shall report the claim to the court, specifying in the report his recommendation with respect to the action taken thereon. Upon receipt of the report, the court shall fix a time for hearing the claim and shall direct that the claimant or the receiver, as the court specifies, shall give notice as the court determines to those persons as appear to the court to be interested therein. The notices shall specify the time and place of the hearing and shall concisely state the amount and nature of the claim, the priorities asserted, if any, and the recommendation of the receiver with reference thereto.

(d) All interested persons may appear at the hearing, and the court shall enter an order allowing, allowing in part or disallowing the claim. The order is appealable.

by way of his contract, cannot make such decisions.

The dispositive language by the court is:

It is further ordered:

A) That the original order still stands as to the property held to be the property of William Moriarity; *i.e.*, the automobile and the computer equipment;

B) Moriarity has no further right, title, or interest in and to the office space and the servicing of the mortgage portfolio past November 16, 1992; and,

C) Moriarity will forthwith vacate the office space and turn over to the Receiver all company books and records that he might possess within the next thirty (30) days.

On December 29, 1992, the Order Approving Proof of Claims and Notice to Creditors and Establishing Claims Bar Date was entered, which approved the method proposed by the Liquidator for establishing notice to, and proof of claims by, creditors of Old Faithful. In that order, the final day for submitting claims by creditors to the Liquidator was set for May 16, 1993. On May 20, 1993, the ongoing liquidation of Old Faithful was assigned to a different district judge. The Liquidator's Initial Report and Recommendation on Claims was filed on October 15, 1993, in which the Liquidator advised the court that approximately 800 claims had been filed by that date. The Liquidator stated Old Faithful's general assets were sufficient to satisfy class (i) and (ii) priority claims and would be sufficient to partially satisfy class (iii) claims. The Liquidator also reported the assets would not be sufficient to satisfy any claims found in classes (iv), (v), or (vi).

At the end of this initial report, the Liquidator requested the court to enter an order setting two separate hearings on creditor claims. (In its Order on Liquidator's Initial Report and Recommendation on Claims, entered November 1, 1993, the district court had agreed the Liquidator could set the two hearings, in accordance with the court's schedule.) The first hearing would resolve all disputes with respect to the priority class to be assigned to a specific creditor. The second hearing would resolve any disputes with respect to the dollar amounts of those claims. All creditor objections to be heard at either hearing were required to be filed by November 30, 1993.

On November 29, 1993, Moriarity filed his objection to the class (iv) priority (general creditors' claims) assigned by the Liquidator to his claim against Old Faithful. Moriarity asserted the dollar amount of his claim was $265,350, and he specifically requested the court to elevate his priority status to class (ii) (a claim secured by a lien perfected prior to the commencement of the delinquency proceedings). Moriarity's priority objection was scheduled for hearing by the court on April 1, 1994, together with some sixty-eight other objections. At that hearing, Moriarity's attorney presented oral argument on the merits of elevating Moriarity's priority status from class (iv) to class (ii).

On May 11, 1994, the court entered an Order Ruling on Objections to Liquidator's Initial Report and Recommendations on Claims. The order specifically addressed Moriarity's objection to class (iv) priority status in a separate paragraph. The court ruled:

> Relating to the objections of William Moriarity to the Liquidator's Initial Report and Recommendations on Claims, the Court finds that these issues have previously been determined by this Court by virtue of the Court's December 7, 1992, Order Granting Receiver's Motion to Clarify Judgment. The Court, therefore, disallows the objections of Mr. Moriarity based upon *res judicata* and collateral estoppel.

Moriarity appealed from that order.

■ We have adopted a test involving four factors to be applied in addressing *res judicata.* In *Moore v. Moore,* 835 P.2d 1148, 1151 (Wyo.1992), we identified those with this language:

> To determine if the doctrine of res judicata applies, we examine the actions for the following factors:
>
> (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; [and] (4) the capacities of the persons are identical in reference to both the

subject matter and the issues between them.

*CLS v. CLJ*, 693 P.2d 774, 775–76 (Wyo. 1985). *See also DLB v. DJB (Paternity of JRW)*, 814 P.2d 1256, 1265 (Wyo.1991); and *Newell v. Trumper*, 765 P.2d 1353, 1355 (Wyo.1988).

These same criteria were invoked in *Harshfield v. Harshfield*, 842 P.2d 535 (Wyo.1992). We note, parenthetically, both *res judicata* and collateral estoppel assume a prior case that was finally resolved. *Delgue v. Curutchet*, 677 P.2d 208, 214 (Wyo.1984). Nevertheless, we apply this test in determining whether Moriarity's claim was barred by *res judicata.*

█ Without question, the parties involved in the April 1, 1994 hearing were the same as those involved in the December 3, 1992 hearing. The earlier hearing was held on the Receiver's request for clarification of the court order dated October 27, 1992, which required the Receiver to complete the terms of Moriarity's Servicing Agreement with Old Faithful. The April hearing was requested by the Liquidator, and was intended to afford all creditors an opportunity to object to the designation of the priority of their claims. The Insurance Commissioner served as both Receiver and Liquidator (although the capacities might be technically different), acting on behalf of Old Faithful. Moriarity was representing his interests in both proceedings. The parties were identical in both hearings.

The issue at the hearing on December 3, 1992 was whether the Liquidator could repudiate Moriarity's Servicing Agreement after liquidation was ordered on November 16, 1992. At that hearing, the attorney for the Liquidator succinctly stated the issue:

> The issue in this motion is, what right does Mr. Moriarity have in the service agreement after the liquidation order? It's as simple as that. And we would ask the Court to issue an order clarifying those issues to make it very clear that Mr. Mor-

iarity has no right to occupy the office building after the order is entered, and that he has no right to service the portfolio under the servicing right after the order is entered.

In addition, counsel alluded to Moriarity's remedy under the statute:

> If Mr. Moriarity contests his classification, **should it be general creditor,** he has the right to present documents to this Court and to appear here at a hearing **after** the proof of claim is filed and present his evidence. He is entitled to full due process, and in essence, basically a trial if he so desires. (Emphasis added.)

The attorney for the Liquidator went on to say:

> Your Honor, we would request the remedy specified in our brief, and that is that any entitlement to which Mr. Moriarity claims under his contractual rights or any other rights be submitted per the exclusive manner set forth in the Rehabilitation and Liquidation Act.

Based upon these statements of counsel and our review of the record of the December 3, 1992 hearing, it is clear the subject matter did not encompass any testimony or evidence concerning whether or not Moriarity qualified as a member of the class of those possessing "secured claims, including claims for taxes and debts due the federal or any state or local government which are secured by liens perfected prior to the commencement of delinquency proceedings * * *." WYO.STAT. § 26–28–125(a)(ii). With respect to Finding No. 13 in the order of the court on the Motion to Clarify, we are satisfied that there was not "any necessity for the expression of opinion * * *" by the district court. *State ex rel. Miller v. Barber*, 4 Wyo. 409, 418, 34 P. 1028, 1030 (1893). The pronouncement by the district court that Moriarity "does not qualify for priority exception" is dictum under the classic definition.[6]

---

6. A statement, remark, or observation. *Gratis dictum;* a gratuitous or voluntary representation; one which a party is not bound to make. *Simplex dictum;* a mere assertion; an assertion without proof.

The word is generally used as an abbreviated form of *obiter dictum,* "a remark by the way;"

that is, an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination; any statement of the law enunciated by the

The hearing on April 1, 1994 specifically was intended to address objections to classifications made by the Liquidator in his Initial Report and Recommendation on Claims presented to the court. That hearing is mandated by statutory language:

(c) * * * [U]pon receipt of the report, [Liquidator's Initial Report and Recommendation on Claims] the court shall fix a time for hearing the claim and shall direct that the claimant or the receiver, as the court specifies, shall give notice as the court determines to those persons as appear to the court to be interested therein. The notices shall specify the time and place of the hearing and shall concisely state the amount and nature of the claim, the priorities asserted, if any, and the recommendation of the receiver with reference thereto.

(d) All interested persons may appear at the hearing, and the court shall enter an order allowing in part or disallowing the claim. The order is appealable.

WYO.STAT. § 26-28-116.

The court and the Liquidator had to comply with these statutory requirements.

The subject matter of that hearing was, as the court stated:

We can begin now. We're here today on hearing in Docket No. 129-207, State versus Old Faithful Life Insurance Company. We're here on a number of objections that have been filed to the recommendations for distribution of the remaining assets.

The issues at this hearing related to the objections of all creditors who sought to contest their assigned priority status. Its purpose was not to address the effect of the Liquidation Order on the right of the Liquidator to repudiate Moriarity's Servicing Agreement. The subject matter of these two hearings was not identical.

Turning to the factor requiring the issues to be the same and related to the subject matter, this criterion is not met. At the December 3, 1992 hearing, the issue was the effect of the Liquidation Order on the earlier order by the court in which the Receiver was required to perform Moriarity's Servicing Agreement. In the December 7, 1992 Order to Clarify Judgment, the court specified that the liquidation of Old Faithful effectively terminated Moriarity's contractual rights under the Servicing Agreement. Essentially, this is the effect of WYO.STAT. § 26-28-123, which provides that the rights and liabilities of the insurer and all others will be fixed as of the date on which the order directing liquidation is filed. There was, however, no occasion to address claim priorities at that hearing.

At the hearing held on April 1, 1994, the repudiation of Moriarity's contractual rights under the Servicing Agreement was not at issue. Repudiation had been justified at the earlier hearing, and Moriarity's rights were fixed as of that date. Moriarity was left with only a claim against Old Faithful. Moriarity presented that claim and, in accordance with the proper procedure, he objected to the classification of his claim by the Liquidator. Then, for the first time, the issue of the priority of Moriarity's claim was before the court. The issues in the two hearings were not the same and related to substantively different subject matter.

We turn to the fourth factor which questions whether the capacities of the parties, in reference to both the subject matter and the issues between them, were identical. We noted earlier that the Insurance Commissioner served as both Receiver and Liquidator. However, the issues with respect to the Motion to Clarify filed in 1992 were joined prior to the Liquidation Order. The matter was heard subsequent to the Liquidation Order but, in light of the record, the Insurance Commissioner was asserting a right to have a clarification of an order entered when he was acting in his capacity as Receiver. We have quoted the remarks of counsel directing the attention of the court to the fact that the matter had changed in the interim from a receivership to a liquidation. This change in status by the Insurance Commissioner certainly places in question whether the fourth

court merely by way of illustration, argument, analogy, or suggestion. Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication.

BLACK'S LAW DICTIONARY 454 (6th ed. 1990).

factor of our test for *res judicata* has been satisfied.

The product of our review of these factors is that *res judicata* was not an appropriate ground for the ruling of the district court with respect to the priority of Moriarity's claim. It is clear, from the articulation of the justification for its ruling, that the district court did not consider the merits of Moriarity's claims for priority.

Alternatively, the district court relied upon collateral estoppel. In resolving the applicability of collateral estoppel, the question to be answered is whether Moriarity's assertion of a secured claim was actually and necessarily before the district court at the December 3, 1992 hearing. *See Delgue,* 677 P.2d at 214; *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670 (Wyo.1935), *reh'g denied,* 49 Wyo. 296, 54 P.2d 814 (1936). The test is whether the determination of the issues sought to be precluded, *i.e.,* the assertion of a secured claim, was necessary or essential to the disposition reflected in the earlier judgment. *See Delgue.* We are satisfied that the record reflects the test was not met. In fact, it could not be met because Moriarity's right to assert a claim as a secured creditor could not be presented until liquidation was ordered and, then, only in accordance with the statute. WYO.STAT. §§ 26–28–110, –116, and –117.

We hold that the issue before the court, when it entered its order of December 7, 1992, was addressed to the right of the Liquidator to repudiate Moriarity's contract. That repudiation resulted in a breach, but the priority of the claim resulting from that breach was not an issue before the court. It follows the doctrine of collateral estoppel would not serve to justify the order entered on April 1, 1994.

■ While neither party opted to discuss the doctrine of law of the case, its application is suggested by the Liquidator's contention that Moriarity's appeal is not timely. The claim is that he should have appealed from the Order to Clarify Judgment within thirty days as required by WYO.R.APP.P. 2.01. Finding No. 13 is incorporated in that order. The thrust of this argument is that Moriarity's status as a creditor was determined at that time and became the law of the case in the absence of an appeal. If the application of this doctrine were available, we should affirm the district court.

In *Triton Coal Co. v. Husman, Inc.,* 846 P.2d 664, 667–68 (Wyo.1993), we described law of the case in this way:

A court's decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation. 1B James W. Moore, Jo Desha Lucas & Thomas S. Currier, Moore's Federal Practice ¶ 0.404[1] (2d ed. 1983). The "law of the case" is a doctrine designed to avoid repetitious litigation and to promote consistent decision making. As such, it is in the same family as *res judicata,* collateral estoppel, and stare decisis. * * * Most commonly, the "law of the case" requires a trial court to adhere to its own prior rulings, adhere to the rulings of an appellate court, **or adhere to another judge's rulings in the same case or a closely related case.** (Emphasis added.)

Were we to perceive the ruling in December of 1992 as a decision on an issue of law, we still would be confronted with the difference in the subject matter of these hearings. Moriarity's contention as to claim priority was presented in connection with the April 1, 1994 hearing. In December of 1992, the issue was the right of the Liquidator to repudiate the Servicing Agreement. While the court made a finding with respect to the priority of Moriarity's position, that issue was not before the court. It could not become an issue until the statutory claims filing procedure was instituted. Consequently, any determination with respect to Moriarity's priority status did not become law of the case.

We hold that it was inappropriate for the trial court to resolve Moriarity's priority status by virtue of *res judicata,* collateral estoppel, or law of the case. Moriarity's objection should have been addressed on its merits, and he did not receive that process which is his due under the statutes. He is entitled to be heard on his assertion of a claim of priority arising out of the repudiation of the Servicing Agreement.

This case is reversed and remanded for further proceedings in accordance with this opinion.