# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 10

**OCTOBER TERM, A.D. 2021**

**January 24, 2022**

ANNE HOLDING and CRANDALL
CREEK RANCH, CO., a Wyoming
corporation,

Appellants
(Plaintiffs),

v.

S-21-0108

LARRY LUCKINBILL; THE LARRY
LEE LUCKINBILL LIVING TRUST;
JOHN LENNON and MELANIE
LENNON,

Appellees
(Defendants).

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson, Judge*

*Representing Appellants:*
M. Jalie Meinecke, Meinecke & Sitz, LLC, Cody, Wyoming. Argument by Ms. Meinecke.

*Representing Appellees Larry Luckinbill and the Larry Lee Luckinbill Living Trust:*
Scott E. Kolpitcke, Copenhaver, Kitchen & Kolpitcke, LLC, Powell, Wyoming. Argument by Mr. Kolpitcke.

*Representing Appellees John Lennon and Melanie Lennon:*
Thomas P. Keegan, Keegan & Krisjansons, P.C., Cody, Wyoming. Argument by Mr. Keegan.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    John and Melanie Lennon (the Lennons) leased property owned by the Larry Lee Luckinbill Living Trust for a 125-year term (the Lennon Lease).  Anne Holding and the Crandall Creek Ranch Company (collectively referred to as Ms. Holding) sought a declaratory judgment stating that the Lennon Lease violated their right of first refusal to purchase the property.  The parties filed cross-motions for summary judgment and the district court concluded that, while the right of first refusal remained in effect, the Lennon Lease did not trigger it.  Ms. Holding appeals and we affirm.

*ISSUES*

[¶2]    The issues are:

> 1.    Did the Lennon Lease trigger Ms. Holding's right of first refusal?
>
> 2.    Did Ms. Holding waive arguments that the rule against perpetuities applies to the Lennon Lease or that Mr. Luckinbill breached the covenant of good faith and fair dealing?

*FACTS*

[¶3]    The facts are undisputed.  Ms. Holding is the president of Crandall Creek Ranch Company, which runs a cattle operation in Park County, Wyoming.  The Larry Lee Luckinbill Living Trust owns a large parcel of land neighboring Ms. Holding's property.  Mr. Luckinbill is the sole trustee of the Larry Lee Luckinbill Living Trust (Mr. Luckinbill and the Larry Lee Luckinbill Living Trust are hereinafter collectively referred to as Mr. Luckinbill).

[¶4]    On August 6, 1982, Mr. Luckinbill leased a portion of his land to Mr. Nielson, Ms. Holding's predecessor in interest (the Nielson Lease).  The Nielson Lease was for a term of three years, after which it would "continue from year to year" unless terminated by either party.  The lease contained a right of first refusal under which Mr. Luckinbill agreed to "grant [Mr. Nielson] the first right to purchase the property . . . upon the same terms and conditions and for the same purchase price as [he] would be willing to sell the property to any other bona fide purchaser of the property."  According to the lease:

> [U]pon receipt of a bona fide offer to purchase the property which is acceptable to [Mr. Luckinbill], [he agrees to] give [Mr. Nielson] written notice of the name and address of the proposed purchaser and all of the terms and conditions of the

1

sale. [Mr. Nielson] will then have thirty (30) days in which to give [Mr. Luckinbill] written notice of whether [he chooses] to exercise [his] right to purchase the property on those terms and conditions, and if [he does], the sale will be completed within the time and in the manner specified in the notice of the offer. If [Mr. Nielson] choose[s] not to exercise [his] right to purchase the property, and the sale to the person designated in the notice is not completed within sixty (60) days after the end of the thirty-day period in which [Mr. Nielson has] the right to exercise [the] option, then the right of first refusal granted herein shall be revived and shall remain in force and effect as if there had been no offer to purchase the property. Unless terminated in the manner specified above, the Right of First Refusal shall remain in effect for a period not to exceed twenty-one (21) years after the death of the survivors of James E. Nielson and Glenn W. Nielson.

[¶5]    On January 29, 1988, Mr. Nielson assigned the Nielson Lease to Ms. Holding. The assignment stated that Mr. Nielson agreed to "grant, convey and assign to [Ms. Holding] all of his right, title and interest in and to the [Nielson] Lease and the property that is the subject thereof, including, without limiting the generality of the foregoing, all of [Mr. Nielson's] rights under the right of first refusal contained therein."

[¶6]    At some point, Mr. Luckinbill subdivided the property subject to the Nielson Lease into smaller numbered parcels. After subdividing the property, he more than once honored Ms. Holding's right of first refusal. In 2004, Mr. Luckinbill notified Ms. Holding of a proposed sale of Parcel 2, and Ms. Holding exercised her right to purchase the property. In 2007, Mr. Luckinbill notified Ms. Holding of a proposed sale of an 18-acre parcel. Ms. Holding once more exercised her right of first refusal.

[¶7]    Between 2007 and 2019, there was no sale activity.[1] In the spring 2019, on two separate occasions, the Lennons sought to purchase different parcels (Parcel 3 and Lot 1) from Mr. Luckinbill. Each time, Mr. Luckinbill notified Ms. Holding of the Lennons'

---

[1] On August 16, 2018, Mr. Luckinbill filed an affidavit with the Park County Clerk attesting to the termination of the Nielson Lease. The document stated that because "the last yearly lease payment was made in 2004, the lease has been null and void since 2005" and indicated that Mr. Luckinbill was "notifying [Ms. Holding] of termination of the Lease and included Right of First Refusal." Twelve days later, on August 28, 2018, Ms. Holding filed a document entitled "Affidavit Affecting Title Notice of Survival of Right of First Refusal." Ms. Holding stated in her affidavit that "even though the lease agreement portion of the Lease Agreement . . . has been terminated," she "fully intend[s] to continue to hold [her] right of first refusal." The validity and effect of these documents are not at issue in this appeal.

offer. Each time, Ms. Holding stepped into the Lennons' shoes, purchasing the subject property (Parcel 3 and Lot 1).[2]

[¶8] The following August, the Lennons entered the Lennon Lease with Mr. Luckinbill for a 6.6-acre parcel with a lease payment of $1200 per year. The lease term was 125 years, beginning August 31, 2019, and ending September 1, 2144.[3]

[¶9] In April 2020, Ms. Holding named the Lennons and Mr. Luckinbill in this suit where she sought a declaratory judgment that the Lennon Lease violated her right of first refusal and asked for an injunction prohibiting the Lennons from making improvements on the property.[4] The parties filed cross-motions for summary judgment. The district court granted some motions and denied others to conclude that the right of first refusal remains in effect, but the Lennon Lease did not trigger it.[5] Ms. Holding appeals.

## DISCUSSION

[¶10] Ms. Holding argues that the district court erred when it made certain findings in favor of Mr. Luckinbill and the Lennons in its decision on summary judgment. She first contends that because the Lennon Lease was for a 125-year term, it was a conveyance of the property and, as such, triggered her right of first refusal. Next, Ms. Holding argues that the Lennon Lease violated the rule against perpetuities and is void. Finally, she maintains that the district court erred by not finding Mr. Luckinbill had breached the covenant of good faith and fair dealing.

## STANDARD OF REVIEW

[¶11] Summary judgment is "an appropriate resolution of a declaratory judgment action" when there are no genuine issues of material fact. *City of Casper v. Holloway*, 2015 WY 93, ¶ 27, 354 P.3d 65, 73 (Wyo. 2015) (quoting *Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals of City of Cheyenne*, 2010 WY 2, ¶ 8, 222 P.3d 158, 161 (Wyo. 2010)).

---

[2] Island Lake, LLC, not Crandall Creek or Ms. Holding, took title to Lot 1. Anne Holding, individually and as a member of Island Lake, LLC, signed a promissory note and mortgage for the property.

[3] In October 2020, the Lennons and Mr. Luckinbill terminated the Lennon Lease and entered a second lease for the same parcel. That lease required the Lennons to pay Mr. Luckinbill $1200 per year and has a term of two years.

[4] The district court granted a temporary injunction, which it vacated after its order on summary judgment.

[5] In his motion for summary judgment, Mr. Luckinbill argued that he did not violate the right of first refusal by entering the Lennon Lease because that lease was not an offer to sell the property and that Ms. Holding's claims are moot because the Lennon Lease has been terminated. The Lennons argued summary judgment was warranted because their lease did not trigger the right of first refusal since it was not a sale of the property, the right of first refusal had been terminated in 2005 when the Nielson Lease was terminated, and there was no valuable consideration for the right of first refusal. In her cross-motion for summary judgment, Ms. Holding refuted the arguments Mr. Luckinbill and the Lennons set forth and asserted that the Lennon Lease is a conveyance and the Lennons were purchasers, therefore her right of first refusal was triggered.

3

[¶12]   This Court reviews the grant of summary judgment in a declaratory judgment action in the same way it reviews all summary judgments.  *Holloway*, ¶ 28, 354 P.3d at 73.

> We review a district court's order granting summary judgment *de novo* and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016).  This Court reviews the same materials and uses the same legal standard as the district court.  *Id.*  The record is assessed from the vantage point most favorable to the party opposing the motion, and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record.  *Id.*  A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.  *Id.*

*Bd. of Trustees of Laramie Cnty. v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, 2020 WY 41, ¶ 6, 460 P.3d 251, 254 (Wyo. 2020) (quoting *Est. of Weeks by & through Rehm v. Weeks-Rohner*, 2018 WY 112, ¶ 15, 427 P.3d 729, 734 (Wyo. 2018)); *see also Sikora v. City of Rawlins*, 2017 WY 55, ¶ 13, 394 P.3d 472, 476 (Wyo. 2017); *Holloway*, ¶ 28, 354 P.3d at 73.

[¶13]   "Statutory interpretation and construction are questions of law reviewed de novo." *Matter of Adoption of ATWS*, 2021 WY 62, ¶ 8, 486 P.3d 158, 160 (Wyo. 2021); *see also In re Est. of Kirkpatrick*, 2003 WY 125, ¶ 6, 77 P.3d 404, 406 (Wyo. 2003); *In re Est. of Meyer*, 2016 WY 6, ¶ 17, 367 P.3d 629, 634 (Wyo. 2016).  When we interpret statutes, we aim to give effect to the legislature's intent.  *Life Care Ctr. of Casper v. Barrett*, 2020 WY 57, ¶ 16, 462 P.3d 894, 898–99 (Wyo. 2020).  We first look to the plain language of the words in the statute to determine that intent.  *Id.*  We "give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'"  *Id.* (quoting *Sullivan v. State*, 2019 WY 71, ¶ 10, 444 P.3d 1257, 1260 (Wyo. 2019), *cert. denied*, 140 S.Ct. 974, 206 L.Ed.2d 130 (2020)).

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection.  To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously.  We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence.  When the

4

> words used convey a specific and obvious meaning, we need
> not go farther and engage in statutory construction.

*Id.* (quoting *Sullivan*, ¶ 10, 444 P.3d at 1260).

[¶14]   Similarly, when we interpret contracts, our aim is to determine the intent of the contracting parties.  "[C]ourts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent."  *Larson v. Burton Constr., Inc.*, 2018 WY 74, ¶ 21, 421 P.3d 538, 545 (Wyo. 2018) (quoting 17A Am. Jur. 2d *Contracts* § 29 (May 2018 update)).

> [W]e interpret a contract as a whole, reading each provision in
> light of all the others to find their plain meaning.  We presume
> each provision in a contract has a purpose, and we avoid
> interpreting a contract so as to find inconsistent provisions or
> so as to render any provision meaningless.

*Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 35, 351 P.3d 943, 953 (Wyo. 2015) (internal citations omitted) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 28, 279 P.3d 1003, 1013 (Wyo. 2012)).  Finally,

> [w]e will not rewrite contracts under the guise of interpretation,
> and so long as there is no ambiguity, we are bound to apply
> contracts as they have been scrivened.  Because [the] primary
> purpose is to determine the true intent and understanding of the
> parties at the time and place the agreement was made[,] the
> process begin[s] by considering *de novo* the plain language of
> the agreements.

*Skaf v. Wyoming Cardiopulmonary Servs., P.C.*, 2021 WY 105, ¶ 42, 495 P.3d 887, 901 (Wyo. 2021) (internal citations and quotation marks omitted).

## I.      *Did the Lennon Lease trigger Ms. Holding's right of first refusal?*

[¶15]   Ms. Holding argues that the 125-year term of the Lennon Lease rendered the lease a sale and, as a result, triggered her right of first refusal.

## A.      The right of first refusal applies to sales.

[¶16]   The Nielson Lease granted Mr. Nielson, and subsequently, Ms. Holding, the right to purchase Mr. Luckinbill's property "upon the same terms and conditions and for the same purchase price as [Mr. Luckinbill] would be willing to sell the property to any other

bona fide purchaser of the property." *See supra* ¶ 4. It also required Mr. Luckinbill to "give [Mr. Nielson/Ms. Holding] written notice of the name and address of the proposed purchaser and all of the terms and conditions of the sale." *See supra* ¶ 4. This language is plain and unambiguous. Ms. Holding's right of first refusal is triggered by potential sales of Mr. Luckinbill's property.

**B.     Do Wyoming recording act's definitions of purchaser and conveyance apply to the Lennon Lease?**

[¶17]   Ms. Holding argues that the Lennon Lease is a conveyance under which the Lennons were purchasers. She relies upon the Wyoming recording act's definitions of "purchaser" and "conveyance." Wyo. Stat. Ann. § 34-1-101 provides, "The term 'purchaser', **as used in this act** shall be construed to embrace every person to whom any estate or interest in real estate shall be conveyed for a valuable consideration, and also every assignee of a mortgage or lease, or other conditional estate." Wyo. Stat. Ann. § 34-1-101 (emphasis added). Section 34-1-102 provides:

> The term "conveyance", **as used in this act**, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or assigned, or by which the title to any real estate may be affected in law or in equity, except wills, leases for a term not exceeding three (3) years, executory contracts for the sale or purchase of lands, and certificates which show that the purchaser has paid the consideration and is entitled to a deed for the lands, and contain a promise or agreement to furnish said deed at some future time.

Wyo. Stat. Ann. § 34-1-102 (LexisNexis 2021) (emphasis added).

[¶18]   Ms. Holding contends that the recording act's definitions apply to the leases at issue here. She argues the Lennon Lease is a conveyance (an instrument in writing which creates a real estate interest for the Lennons); the Lennons are purchasers (persons to whom an interest in real estate has been conveyed for valuable consideration); and they have been assigned a conditional estate. From this premise, she contends the Lennon Lease triggered her right of first refusal and that Mr. Luckinbill violated this right by entering into the lease without first giving Ms. Holding the ability to exercise it.

[¶19]   Ms. Holding cites two cases in support of her argument: *Foster v. Wicklund*, 778 P.2d 118 (Wyo. 1989), and *Bentley v. Dir. of Off. of State Lands & Invs.*, 2007 WY 94, 160 P.3d 1109 (Wyo. 2007). The plaintiffs in *Foster* had a 99-year lease of residential land in Woods Landing, Wyoming. The plaintiffs complained of nuisance and trespass in a suit against the lessor's estate and a neighbor who leased adjoining lands from the same lessor

for its sawmill business.  *Foster*, 778 P.2d at 119–20.  The district court's final judgment held that the estate was not a proper party, the propriety of the business lease is not affected by the language of nearby residential leases, and a stipulation between the plaintiffs and the neighboring lessees settled all remaining issues.  *Id.* at 120.  The plaintiffs appealed, arguing that the estate was a proper party and that the district court's findings were erroneous.  *Id.* at 120–21.  This Court did not consider the plaintiffs/appellants' arguments.  Instead, it held that the appeal was mooted by the settlement between the parties.  *Id.* at 122–23.  Justice Urbigkit, writing for the majority, described the plaintiffs' 99-year lease in a footnote.  He said, "Pursuant to W.S. 34-1-102, the 99-year lease constitutes a conveyance of real estate."  *Id.* at 119 n.2.  The status of the parties as owners or lessees was not at issue in *Foster*.  The Court did not analyze the relevance or applicability of § 34-1-102 to the case.  In short, the footnote is obiter dictum and lacks precedential force.[6]

[¶20]  In *Bentley*, prior to offering certain land for sale at public auction in 1993, the State Board of Land Commissioners approved an easement over the land in favor of the Wyoming Game and Fish Commission.  This easement was not executed or recorded in the Carbon County Clerk's Office until 2000.  The land was auctioned, and the purchaser entered into an installment land contract with the State which was recorded in the Office of the County Clerk for Carbon County on June 16, 1993.  This installment land contract was later assigned to the Bentleys.  The Bentleys paid off the contract in 2002, and the State of Wyoming issued a patent conveying the land to them.  The patent was recorded in the Carbon County Clerk's Office on May 24, 2002.  Relying upon the operation of Wyo. Stat. Ann. § 34-1-120, the Bentleys brought suit alleging that the easement could not be enforced against them as bona fide purchasers.  *Bentley*, ¶¶ 5–15, 160 P.3d at 1112–14.  This Court affirmed the district court's decision that the Bentleys had taken the property subject to the easement.  The recording act's application was squarely at issue in *Bentley*, and the Court analyzed the transactions leading to the patent and the recorded instruments under the recording act.

[¶21]  The Bentleys argued that their patent related back to the original sale of the property in 1993, and under Wyo. Stat. Ann. § 34-1-120, the easement was void because it was not first recorded.  *Bentley*, ¶¶ 15, 40, 160 P.3d at 1114, 1120.

---

[6] Obiter dictum is:

> "a remark by the way;" that is, an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination; any statement of the law enunciated by the court merely by way of illustration, argument, analogy, or suggestion.  Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand are obiter dicta, and lack the force of an adjudication.

*Claim of Moriarity*, 899 P.2d 879, 885 n.6 (Wyo. 1995) (quoting *Dictum*, Black's Law Dictionary 454 (6th ed. 1990)).

7

[¶22] Wyo. Stat. Ann. § 34-1-120 states:

> **§ 34-1-120.   Unrecorded conveyance void as to subsequent purchasers recording first.**
>
> Every **conveyance** of real estate within this state, hereafter made, which shall not be recorded as required by law, shall be void, as against any subsequent **purchaser** or purchasers in good faith and for a valuable consideration of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

Wyo. Stat. Ann. § 34-1-120 (LexisNexis 2021) (emphasis added).  The *Bentley* Court examined the statutory definitions of "purchaser" and "conveyance," Wyo. Stat. Ann. §§ 34-1-101 (purchaser) & 34-1-102 (conveyance).  It concluded that, while the Bentleys were purchasers, their executory contract was not a conveyance as such a contract is expressly excluded from the statutory definition. *Bentley*, ¶ 43, 160 P.3d at 1121.  The conveying document was the patent, and because the easement was recorded before the Bentleys' patent, the Bentleys were not entitled to relief under Section 120. *Id.* ¶ 46, 160 P.3d at 1122.

[¶23] Ms. Holding argues that because the *Bentley* Court "utilized the [recording act] definitions of conveyance and purchaser . . . to define the transaction that took place, even though the recordation statute allowed no protection" to the Bentleys, we should likewise apply those definitions here.  We find this argument unpersuasive.  In *Bentley*, the recording statute was central to the resolution of the Bentleys claim that they were bona fide purchasers.  The Court applied the statute to determine the effect of recorded documents.  Here, there are no issues of or related to recording or the failure to record real estate instruments and the consequent effect on title.

[¶24] The recording act, in defining the terms "purchaser" and "conveyance," limits the definitions to "this act."[7]  If the legislature had desired, it could have easily made the definitions of purchaser and conveyance applicable outside the scope of this particular law. It chose not to do so.

---

[7] According to the section notes, "this act" refers to those sections of Title 34, that comprise Wyoming's recording act.  The note to Wyo. Stat. Ann. § 34-1-101 states: "The words 'this act' appearing in this section, refer to ch.1, Laws 1882, which appears herein as" the following statutes: Wyo. Stat. Ann. §§ 34-1-101 to -108, 34-1-110 to -113, 34-1-115 (repealed by Laws 2008), 34-1-116 (repealed by Laws 2008), 34-1-118 to -123, 34-1-126 (repealed by Laws 2008), 34-1-127 to -128, 34-1-130, 34-1-132, 34-1-135 to -136. *See* note to Wyo. Stat. Ann. § 34-1-101.  The note to Wyo. Stat. Ann. § 34-1-102 refers to the note to 34-1-101 for the "Meaning of 'this act.'"

[¶25] The Nielson Lease does not refer to the recording act or its definitions. Ms. Holding's efforts to bootstrap the definitions found in the recording act to bolster her interpretation of her rights under the Nielson Lease are unavailing. The recording act definitions are not relevant to our interpretation of the lease language. *See Barrett*, ¶ 16, 462 P.3d at 898–99 (we construe statutory provisions *in pari materia*, and give effect to every word, clause, and sentence); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1203 (Wyo. 2000) (the legislature specifically limited the definition of "bond" to the Political Subdivision Bond Election Law, accordingly application of that definition in other circumstances would run against the legislature's intent).

## C.    Is the Lennon Lease a sale?

[¶26]  We have defined a "lease" as "[a]ny agreement which gives rise to the relationship of landlord and tenant." *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 543 (Wyo. 1988) (citations omitted).  According to Black's Law Dictionary, a lease is "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu[ally] rent.  The lease term can be for life, for a fixed period, or for a period terminable at will." *Lease*, Black's Law Dictionary (11th ed. 2019).

> Fundamental to the relationship of landlord and tenant is the proposition that a lease, while very often granting exclusive possession of the premises to the lessee for the period specified in the lease, does not grant "ownership" of the land to the lessee as that term has been defined.  The very nature of a lease encompasses a recognition by the lessee that he does not have an ownership interest in the property.  The necessary elements of the relationship of landlord and tenant have been said to be: "[p]ermission or consent on the part of the landlord, subordination to the landlord's title and rights on the part of the tenant, a reversion in the landlord, an estate in the tenant, and the transfer of possession and control of the premises to the tenant under a contract either express or implied between the parties." *See Coggins v. Gregorio*, 97 F.2d 948, 950 (10th Cir. 1938).  While the landlord and tenant enjoy separate and distinct estates in the leased premises, it is inherent to the relationship that the legal title is in the landlord, and the tenant has only a usufructory interest limited by the term of the lease. *Redgrave v. Schmitz*, 584 S.W.2d 374 (Tex. 1979).  A leasehold is an "interest" in real estate, but it is not a freehold. *King v. White*, 499 P.2d 585 (Wyo. 1972).

*Belle Fourche*, 766 P.2d at 543.

9

[¶27]   In contrast, a "sale of land" is the "transfer of title to real estate from one person to another by a contract of sale." *Sale of Land*, Black's Law Dictionary (11th ed. 2019). In *McGuire v. Lowery*, the owners' transfer of real property to a related entity did not trigger a right of first refusal because the transfer was not a sale. We held, "for a transaction to constitute a 'sale' and trigger a first right of refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property . . . ." *McGuire v. Lowery*, 2 P.3d 527, 532 (Wyo. 2000).

[¶28]   In *Dewey*, the appellants argued that appellee's gravel extraction, oil and gas, grazing, and hunting leases triggered their right of first refusal. They contended that "each lease conveyed 'real property' to each lessee for money, resulting in a 'sale'" of the property. *Dewey v. Dewey*, 2001 WY 107, ¶ 19, 33 P.3d 1143, 1148 (Wyo. 2001). We held that a distinguishing factor between a sale, which would trigger a right of first refusal, and a lease, which would not, is whether the party gaining the interest in the property has ownership or control over that property. *Dewey*, ¶ 22, 33 P.3d at 1149. "[A] 'sale' in the context of a right of first refusal is a 'transfer for value of a significant interest in the subject property to a stranger who thereby gains substantial [ownership or] control over the subject property.'" *Dewey*, ¶ 22, 33 P.3d at 1149 (quoting *Raymond v. Steen*, 882 P.2d 852, 857 (Wyo. 1994)); *see also Rainbow Oil Co. v. Christmann*, 656 P.2d 538, 543–44 (Wyo. 1982) (finding that "sale" in context of right of first refusal is to "receive a narrower interpretation than is the term 'transfer'"). We concluded that none of the leases in question "c[a]me close, as a matter of law, to approaching transfers involving significant interests which result in another party gaining substantial ownership or control over the subject property." *Dewey*, ¶ 27, 33 P.3d at 1150.

[¶29]   In *Williams Gas Processing*, Williams and Union Pacific (UPRC) entered into agreements under which they agreed to build a gas processing plant and a gas gathering system (the property). *Williams Gas Processing--Wamsutter Co. v. Union Pac. Res. Co.*, 2001 WY 57, ¶ 4, 25 P.3d 1064, 1066 (Wyo. 2001). Those agreements gave each party a preferential purchase right if the other "desires to sell" its interest in the property, either "as a separate transaction" or "in a package of assets." *Id.* ¶ 3, 25 P.3d at 1065. The agreements also stated that there "shall be no preferential right to purchase . . . where [UPRC or Williams] wishes . . . to dispose of its interests by merger . . . or [by] sale or transfer of its interests to a subsidiary . . . ." *Id.* ¶ 14, 25 P.3d at 1071–72. UPRC decided to transfer its interest to Duke Energy (Duke). It accomplished its transfer by first transferring its interest to various subsidiaries, and ultimately, Union Pacific Fuels, Inc. (UPFI). Finally, through an agreement in which UPRC, as the "Seller," and Duke, as the "Buyer," UPFI merged with a subsidiary of Duke; the result being that Duke acquired UPRC's interest. *Id.* ¶¶ 6–7, 25 P.3d at 1069–70. Williams contended that the merger was a sale that triggered its preferential purchase right. This Court agreed, relying upon our definition of a "sale" in the context of a right of first refusal: "[A] sale is made for purposes of a right of first refusal when there is a transfer for value of a significant interest in the

10

subject property to a stranger who thereby gains substantial [ownership or] control over the subject property." *Id.* ¶ 16, 25 P.3d at 1072 (quoting *Raymond*, 882 P.2d at 857). We concluded:

> It is unmistakable that UPRC desired to sell its interest in [the property]. It did not wish to merge with Duke or any other corporate entity. Its goal was to reduce its debt by means of a sale of assets. UPRC solicited buyers for those assets and eventually "sold" them to Duke . . . . We will not argue with UPRC's denomination of this transaction as a "merger" for whatever other purposes that may serve. However, for purposes relevant to the resolution of this case, we hold that it was a "sale."

*Id.* ¶ 15, 25 P.3d at 1072. We reversed and remanded the matter to the district court with instructions to enforce Williams' rights of first refusal. *Id.* ¶ 20, 25 P.3d at 1073.

[¶30] Applying these definitions and caselaw here, we conclude that the Lennon Lease is not a sale. Like the transfers in *McGuire* and *Dewey*, the Lennon Lease did not result in an actual change of control of the property, nor did it convey ownership. Rather, it conveyed the right to use the property. Under the terms of the Lennon Lease, Mr. Luckinbill retained ownership of and legal title to the property. The Lennons had the right to use the property during the term of the lease. The Lennon Lease limited the Lennons' use of the property: it allowed the Lennons to use the parcel for "Personal/Family Living, Recreational, Agriculture and Running Livestock" and for "any Small Home Business within reason." It required Mr. Luckinbill's approval for any improvements or changes in use, stating that any other use must be "approved by [the] Landlord in writing," and alterations to the parcel required the "written approval of the Landlord." Further, if the Lennons defaulted, Mr. Luckinbill had the option of terminating the lease.

[¶31] The Nielson Lease granted Ms. Holding the right to match an offer to purchase the property. This right is not triggered by a lease of the property. The Lennon Lease was not a sale, and it did not invoke Ms. Holding's right of first refusal.

## II. *Did Ms. Holding waive arguments that the rule against perpetuities applies to the Lennon Lease or that Mr. Luckinbill breached the covenant of good faith and fair dealing?*

[¶32] Ms. Holding next argues that the district court erred when it failed to apply the rule against perpetuities to the Lennon Lease and when it did not find that Mr. Luckinbill breached the covenant of good faith and fair dealing. Mr. Luckinbill and the Lennons argue that those issues were waived.

11

## A. The Rule against Perpetuities

[¶33]   The district court did not rule on the question of whether the rule against perpetuities applies in this case.  The record reflects that Ms. Holding raised the rule against perpetuities for the first time during the oral argument on the parties' motions for summary judgment.  The extent of her argument was:

> If you have a contract that has this type of -- of ending date on it, 125 years, which violates the rule against perpetuities, by the way, you . . . cannot consider this just a lease agreement[.]
>
> .   .   .
>
> I've claimed that there's a violation of the rule against perpetuities in my complaint,[8] but I've not necessarily briefed that at this point.  But I don't think the Court can ignore the rule of perpetuities in this case.  The lease agreement that exists for 125 years absolutely violates the rule against perpetuity, so I think it's invalid at the inception.

[¶34]   The district court offered the parties the opportunity to supplement their arguments after the summary judgment, and Ms. Holding failed to do so.  Ms. Holding's statements at oral argument, absent authority and support in the pleadings, was insufficient to present the application of the rule against perpetuities to the district court.  *See Mirich v. State ex rel. Bd. of Trustees of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 44, 481 P.3d 627, 638–39 (Wyo. 2021) (untimely argument pertaining to bonus pay was "too little, too late").  We have often repeated that we will not consider an issue raised for the first time on appeal.  *See Stevens v. Anesthesiology Consultants of Cheyenne, LLC*, 2018 WY 45, ¶ 39, 415 P.3d 1270, 1284 (Wyo. 2018) (question of illegality of contract raised belatedly before the district court would not be considered on appeal); *Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 32, 393 P.3d 1279, 1291 n.7 (Wyo. 2017); *In re AGS*, 2014 WY 143, ¶ 33, 337 P.3d 470, 480 (Wyo. 2014).  We will not now consider Ms. Holding's newly articulated argument regarding the rule against perpetuities.

## B. The Covenant of Good Faith and Fair Dealing

[¶35]   Ms. Holding similarly did not plead a breach of the covenant of good faith and fair dealing in the district court.  Mr. Luckinbill argued in his motion for summary judgment that Ms. Holding's claims were moot because the 125-year lease had been terminated and he had entered into a new, two-year lease with the Lennons.  *See supra* n.3.  In response,

---

[8] Careful review of the complaint reveals that the rule against perpetuities was not raised there.

Ms. Holding argued that Mr. Luckinbill had maneuvered to avoid her right of first refusal, first by entering the 125-year Lennon Lease and then, once he knew that she considered that lease a conveyance, by terminating the Lennon Lease and entering a new two-year lease with them. Ms. Holding now asserts these actions constituted "attempts . . . to avoid and undermine [Ms. Holding's] right of first refusal . . ." in violation of "the[] covenant to operate in good faith and fair dealing . . . ." At oral argument, Ms. Holding's attorney told the district court:

> [C]learly I did not talk about the second lease agreement or terminating the first lease agreement in my complaint, because all that was done after I filed my complaint . . . . [T]he defendants took this action as remedial action after I filed the complaint, so certainly I had no basis to say that there was a breach of the good faith and fair dealing in my complaint because of the fact that this hadn't occurred at the time.
>
> We certainly could have amended our complaint to -- to include those facts and to claim breach of contract, breach of good faith and fair dealing, ask for some sort of damages in this matter, but we didn't feel the need to do that, Your Honor. We still just want you to tell us what the effect of this lease is on the right of first refusal. And so I'm going to go forward in that notion, Your Honor, that we really just want to know what you think.

Ms. Holding expressly waived her claim for breach of the covenant of good faith and fair dealing. She cannot now raise the issue on appeal. *See Verheydt v. Verheydt*, 2013 WY 25, ¶ 30, 295 P.3d 1245, 1253 (Wyo. 2013) (husband's express waiver of an evidentiary hearing precluded his ability to challenge the process on appeal).

## *CONCLUSION*

[¶36] The Lennon Lease did not trigger Ms. Holding's right of first refusal. Ms. Holding waived arguments that the rule against perpetuities applies to the Lennon Lease and that Mr. Luckinbill breached the covenant of good faith and fair dealing. We affirm.